**44**

UNITED STATES, Appellant and
Cross–Appellee,

v.

David W. DONLEY, Sergeant, U.S.
Army, Appellee and
Cross–Appellant.

No. 65,107.
CM 8802432.

U.S. Court of Military Appeals.

Argued March 12, 1991.
Reargued May 21, 1991.
Decided Sept. 3, 1991.

For the Accused: *Captain Timothy M.
Lawlor* (argued and reargued); *Colonel
Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Major Michael J. Kelleher,
Captain W. Renn Gade* (on briefs).

For the United States: *Colonel Alfred F.
Arquilla* (argued and reargued); *Lieutenant Colonel Daniel J. Dell'Orto* (on
briefs).

*Opinion of the Court*

WILKINS, Circuit Judge: *

Sergeant Donley was convicted by a general court-martial composed of one officer
and four enlisted members of the premeditated murder of his wife and of committing

---

* Of the United States Court of Appeals for the
Fourth Circuit, sitting by designation pursuant

to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

an indecent act upon her, in violation of Articles 118(1) and 134, Uniform Code of Military Justice, 10 USC §§ 918(1) and 934, respectively. He was sentenced to a dishonorable discharge, confinement for life, total forfeitures, and reduction to private (E–1). The convening authority approved the sentence.

The Court of Military Review reversed his conviction based upon its conclusion that he had not received a fair and impartial trial. 30 MJ 973, 976 (1990). The Acting Judge Advocate General of the Army requested that this Court review the following issue:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED IN HOLDING THAT THE MILITARY JUDGE ABUSED HIS DISCRETION IN FAILING TO DECLARE, *SUA SPONTE*, A MISTRIAL IN [THE ACCUSED'S] COURT–MARTIAL OVER DEFENSE OBJECTION.

We also granted Sergeant Donley's cross-petition for grant of review, which asked us to consider:

WHETHER [HE] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO MOVE FOR A MISTRIAL AND OBJECTED TO THE MILITARY JUDGE'S PROPOSAL TO DECLARE A MISTRIAL.

The issues we are called upon to resolve arise out of the testimony of a government witness, Chief Warrant Officer (CW2) Hinchman. On the evening of the homicide, Mr. Hinchman had a date with Sergeant Donley's wife, Kyong Suk Kim Donley. During the night, Sergeant Donley saw his wife and Hinchman in a night club embracing and kissing. She noticed Sergeant Donley and went over to talk with him. She "told" him to return to his duty station which was located some miles away. He left the club; but, instead of returning to his unit, he returned to their apartment and waited for her. When she and Hinchman returned, Donley advised Hinchman that Kyong Suk Kim was married to him. Hinchman promptly left, indicating that he

did not know that Kyong Suk Kim was married.

Following this encounter, Sergeant Donley's wife told him that she did not love him. According to Donley's confession, he jumped from his chair, grabbed her by the throat, pushed her back on the bed, and choked her. The resulting strangulation was determined to be the cause of Mrs. Donley's death.

During the trial, Mr. Hinchman testified concerning his relationship with the deceased and the events of the evening in question. Following direct and cross-examination, the president of the court-martial, Colonel Holeman, submitted the following questions in writing to the military judge, the second of which prompted an objection by defense counsel:

1. Did SGT Donley sound intoxicated when he addressed you at the home?

2. In the discussion where Mrs. Donley told you she was divorced, did she talk about her former husband? What did she say?

The judge permitted Mr. Hinchman's negative answer to the first question. However, before allowing the witness to answer the second question, the judge called a side-bar conference and instructed the witness to "lean over ... and tell" him "what it was that she [Mrs. Donley] stated" to the witness. Mr. Hinchman then replied (apparently in a fairly loud voice):

I asked her the question as to why she had been divorced and she simply told me that her husband had tried to kill her before. I asked her how and she told me that it was by strangulation or choking.

The military judge then excused the court members for the evening and ruled, *in camera,* that the statement was inadmissible. When the court-martial reconvened the next morning, the military judge, who apparently had learned that the witness could be heard beyond the side bar, asked the court members if "anyone hear[d] the witness' response to the question at the side-bar." The president of the

court-martial, Colonel Holeman, replied that he had.

The judge then excused all of the members except Colonel Holeman and conducted an inquiry into the matter. Art. 39(a), UCMJ, 10 USC § 839(a). After Colonel Holeman advised the judge of what he had heard, the judge then asked, "Can you disregard what you have heard?" Colonel Holeman responded candidly:

> To the extent that any human being can disregard something that he's heard and try to put it out and not make it relevant to your thought-process, I will attempt to do so.
>
> *　　*　　*
>
> I don't think that any reasonable individual could offer you anything other than that, judge.

Trial counsel, apparently not satisfied with Colonel Holeman's response, then asked him:

> Sir, if you were instructed by the judge that hearsay statements without sufficient indicia of reliability are to be disregarded, could you follow his instructions under the law?

Colonel Holeman responded:

> Yes. I don't know what's going to happen when we try to adjudge this fellow's innocence or guilt; we'll all make our statements and I will not use that statement back in those discussions. The fact that it will bear on my own vote ... my own vote, I cannot say that I can exclude it totally, but I will not use it in the discussions.

After conferring further with counsel, the military judge resumed questioning Colonel Holeman, asking:

> [C]an you, personally disregard ... what you overheard in your deliberations on the findings in this case?
>
> PRES: I believe I can. I mean, I will give it my best shot. To say, exclusively "Yes" or "No," I don't think any human being can do that. But I will give it my best shot and will try to completely disregard it.

Following this exchange, the military judge said that he would grant a mistrial unless the defense objected. The defense objected. The judge asked Sergeant Donley if he understood the situation and if he concurred in that decision. Sergeant Donley answered that he understood and agreed.

Upon review below, the Court of Military Review concluded that Colonel Holeman "was unable to assure the military judge that he could disregard what he had heard." 30 MJ at 976. Thus, they reasoned that the court-martial panel was constitutionally tainted and that the military judge should have declared a mistrial, notwithstanding defense counsel's objection.

■ We disagree with the Court of Military Review. First, as the dissenting judge below concluded, Colonel Holeman "was stating the obvious." *Id.* at 977. If this member had responded to the military judge's questions with a simple "yes" or "no" answer, the legal effect would be the same. One can only perform to the best of one's ability. We can ask no more of jurors or court members.

■ Secondly, even if we construe the court member's responses as somehow tainting him with the stench of unfairness, he was not *per se* disqualified. The mere fact that a juror possesses some knowledge about facts not admissible in evidence does not render the juror unavailable to sit, so long as the parties to the litigation, particularly a defendant in a criminal trial, knowingly accept that member as qualified. If both the defense and the Government are content with the member, the judge must be extraordinarily careful about excusing the member after the trial begins on the grounds of "manifest necessity" and should do so only where the ends of justice cannot otherwise be met.

It is well settled that a judge may declare a mistrial over the objection of an accused if the record of trial reveals a "manifest necessity." The Supreme Court has said:

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

*Arizona v. Washington*, 434 U.S. 497, 506 n. 18, 98 S.Ct. 824, 830 n. 18, 54 L.Ed.2d 717 (1978), *quoting United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

■ However, we have found no authority for the proposition that a judge erred because he did not, *sua sponte*, grant a mistrial over defense objection. *See generally* Annotation, *Former Jeopardy: Propriety of Trial Court's Declaration of Mistrial or Discharge of Jury, Without Accused's Consent, on Ground of Prosecution's Disclosure of Prejudicial Matter to, or Making Prejudicial Remarks in Presence of, Jury*, 77 ALR 3d 1143 (1977). Reported cases almost always involve the contrary situation—that is, the trial judge did grant a mistrial over the objection of the accused or at least without his consent, upon a finding of "manifest necessity." *Id.* Absent "manifest necessity," jeopardy attaches, and the Government is barred from trying the accused a second time.

Lastly, as we address the issue of whether the military judge correctly deferred his ruling to the defense, we cannot overlook the accused's perspective of the trial situation. As Judge Cox noted in *Burtt v. Schick*, 23 MJ 140, 142 (CMA 1986):

Under Article 44(a), UCMJ, 10 USC § 844(a), which applies the protections of the fifth amendment of the United States Constitution to servicemembers, an accused cannot be tried twice for the same offense. Among other protections, the double-jeopardy clause gives an accused a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).

The present case well-illustrates this "valued right" to "a particular tribunal." In military jurisprudence, an accused has three separate and distinct choices as to the "tribunal" which will ultimately hear the case. The accused may choose to be tried by:

(1) A court-martial consisting of officer members [Art. 16(1)(A), UCMJ, 10 USC § 816(1)(A)];

(2) A court-martial which has in addition to officer members at least one-third enlisted members [Art. 25(c)(1), UCMJ, 10 USC § 825(c)(1)]; or,

(3) Except in capital cases, military judge alone [Art. 16(1)(B)]. *See* Art. 18, UCMJ, 10 USC § 818.

In this case, the accused chose to be tried by a court-martial with both officer and enlisted members. Indeed, although he was entitled to have only one-third of the members drawn from the enlisted ranks, this court-martial consisted of four enlisted persons and one officer member, Colonel Holeman. Thus, as the judge considered the proper resolution of the issue, the defense faced the real possibility of losing what it may well have considered an excellent tribunal, one preferred by the accused to almost any other he could have chosen. Most certainly, had the judge granted the mistrial over defense objection, the Government would have had an almost insurmountable burden of overcoming a claim of former jeopardy in a subsequent trial. *See Harris v. Young*, 607 F.2d 1081, 1084–87 (4th Cir., 1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980).

[4] For these same reasons, the accused cannot prevail in his claim that his lawyers were ineffective. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 MJ 186 (CMA 1987). The lawyers were present, observed the demeanor and sincerity of the court member, evaluated the evidence against their client at the time of the proposed mistrial, consulted with their client concerning the matter and the composition of the court-martial panel, and

made a decision. It was a decision which reasonable, well-trained, and skilled attorneys would make, given the circumstances then existing, and it was a decision for which the primary defense lawyer has given acceptable explanations in her post-trial submissions.

With respect to counsel's performance, we adopt the following sentiment of the Supreme Court of South Carolina, as expressed by its Chief Justice:

> With regard to this issue, the presentation of the appellant's current counsel has been exhaustive and has left no stone unturned. We have thoroughly and meticulously considered these arguments of counsel. An in-depth recitation would serve no purpose, for in the final analysis they have as a bedrock the hindsight quibbling over trial tactics which are not a sufficient basis to warrant post conviction relief. The actions and decisions of the trial counsel are not to be measured in terms of results.

*Shaw v. State*, 276 S.C. 190, 277 S.E.2d 140, 142 (1981).

We answer the certified question in the affirmative. With regard to Sergeant Donley's cross-petition, we hold that he was not denied effective assistance of counsel.

The decision of the United States Army Court of Military Review setting aside the findings and sentence is reversed. The record of trial is returned to the Judge Advocate General of the Army for submission to that court for further review under Article 66, Uniform Code of Military Justice, 10 USC § 866.

Chief Judge SULLIVAN and Judge COX concur.

Senior Judge EVERETT recused himself from this case on his own motion.