UNITED STATES, Appellee

v.

Tomal R. THOMPKINS, Airman First Class
U.S. Air Force, Appellant

No. 02-0186

Crim. App. No. 33630

United States Court of Appeals for the Armed Forces

Argued October 16, 2002

Decided January 28, 2003

CRAWFORD, C.J., delivered the opinion of the Court, in
which GIERKE, EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant:  Major Natasha V. Wrobel (argued); Colonel
Beverly B. Knott, Major Patricia A. McHugh, and Major Jeffrey A.
Vires, (on brief).

For Appellee:  Major Linette I. Romer (argued); Lieutenant
Colonel Lance B. Sigmon (on brief).

Military Judge: Gregory E. Pavlik.

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.**

Chief Judge CRAWFORD delivered the opinion of the Court.

Appellant was tried by a general court-martial consisting of a panel of officer members at Sheppard Air Force Base (AFB), Texas. Appellant was found guilty of willful disobedience of a superior commissioned officer and assault with a loaded firearm, in violation of Articles 90 and 128, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 890 and 928 (2002), and sentenced to a bad-conduct discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to the grade of airman basic. The United States Air Force Court of Criminal Appeals affirmed the findings and sentence.

We granted review of the following two issues:

I.  WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT TO SUPPORT THE CONVICTION FOR THE ADDITIONAL CHARGE OF WILLFUL DISOBEDIENCE OF HIS SUPERIOR COMMISSIONED OFFICER BY VIOLATING A NO-CONTACT ORDER WITH A1C DOUGLAS SMALLWOOD.

II. WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE FAILED TO GRANT THE DEFENSE MOTION FOR MISTRIAL ON THE GROUNDS OF PROSECUTORIAL MISCONDUCT.

For the reasons set forth below, we affirm.

I.  WILLFUL DISOBEDIENCE OF THE NO-CONTACT ORDER

A heated dispute between Army and Air Force personnel, including Appellant, led to an off-post altercation in which a civilian bystander was wounded by gunfire. During the course of the subsequent investigation, Appellant received an order from

2

his commander, Colonel Timothy Lillard, that included the following:

> Effective immediately, you will not have any contact (verbal, written, or physical) with [6 named persons, including A1C Douglas Smallwood]. . . . If any of these individuals attempts to contact you through verbal or written communication, either directly or indirectly, you will terminate the contact immediately and report the attempt to me or your First Sergeant immediately.

Colonel Lillard testified that the purpose of the order was to ensure that Appellant did not discuss the investigation with any of the individuals listed in the order.

While under this order, Appellant approached Airman Regina Griffin, the girlfriend of A1C Smallwood, and said, "I need my [compact disk]," referring to a compact disk then in the possession of A1C Smallwood. Airman Griffin relayed this information to A1C Smallwood. Several days later, A1C Smallwood approached Appellant and gave him a compact disk. This contact was videotaped by personnel from the Air Force Office of Special Investigations (AFOSI). The record does not indicate whether the disk contained commercially recorded music, or whether it contained writings or other information entered by an individual.

Prior to trial on the merits, the military judge rejected a defense challenge to the legality of the order. Appellant has not challenged the validity of that ruling in the present appeal. The granted issue addresses the legal sufficiency of

the evidence. The test for legal sufficiency of the evidence "is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." United States v. Turner, 25 M.J. 324, 324 (C.M.A. 1987) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

Article 90 of the UCMJ punishes one who "willfully disobeys a lawful command of his superior commissioned officer." "'Willful disobedience' is an intentional defiance of authority," and not "[f]ailure to comply with an order through heedlessness, remissness, or forgetfulness . . . ." Manual for Courts-Martial, United States (2002 ed.) Part IV, para. 14.c.(2)(f). In the present case, there is evidence that Appellant initiated contact with A1C Smallwood through Airman Griffin, that Airman Griffin contacted A1C Smallwood, and that there was subsequent contact between A1C Smallwood and Appellant. In addition to the evidence of events leading up to the prohibited contact, the AFOSI videotape provided the members with evidence of Appellant's demeanor in connection with the exchange of the compact disk. Under these circumstances, the members of the court-martial could reasonably find beyond a reasonable doubt that Appellant willfully disobeyed the order by taking action to initiate and engage in contact prohibited by the order.

Public policy supports a strict reading of this no-contact order. A military commander who has a legitimate interest in deterring contact between a service member and another person is not required to sort through every contact to determine, after the fact, whether there was a nefarious purpose. A service member, like Appellant, who initiates contact contrary to the terms of such an order, is subject to punishment under either Article 90 or Article 92, 10 U.S.C. § 892 (2002), without the necessity of proof that the contact was undertaken for an improper purpose.

## II. FAILURE TO GRANT A MISTRIAL FOR PROSECUTORIAL MISCONDUCT

At the start of trial, defense counsel made a motion in limine seeking the exclusion of certain evidence. The military judge ruled that the issue of whether Appellant had a valid driver's license at the time of the offense was inadmissible. The military judge also barred mention of Airman Tabois, and instructed the prosecution to "preclude the special agent, or whoever is going to testify about the videotape from talking about Airman Tabois."

The prosecution also sought rulings on several exhibits. Prosecution Exhibit 5 was a two-page exhibit consisting of two pictures of the shooting victim. The first picture was taken on the night of the shooting, and the second picture was taken a few weeks after the shooting. Defense counsel objected to both

photographs based on foundation, and objected to the second photograph as to relevance in findings.  The military judge admitted the first page or picture, but not the second, instructing the prosecution that they could "separate them and offer the second page as another exhibit at a later point."

During assistant trial counsel's opening statement, the military judge sustained two objections from defense counsel based on the argumentative nature of the comments.  On two other occasions, the military judge sua sponte interrupted assistant trial counsel and instructed him not to make "conclusions" or "characterize" the evidence.  After the fourth time, the military judge instructed the court members that arguments and opening statements are not evidence, and that the opening statement is designed to tell the members what is going to be presented and is not a second argument.  The military judge asked the members to listen very carefully to the evidence, explaining that much of what had been said thus far had been impermissible argument.

The prosecution called the shooting victim, Mr. Keith Stevenson, as its first witness.  During assistant trial counsel's questioning, he asked Mr. Stevenson about how having a bullet surgically removed from his arm had impacted him.  Defense counsel objected, and the assistant trial counsel promptly withdrew the question.  Assistant trial counsel asked

Mr. Stevenson questions about Prosecution Exhibit 5. He then asked Mr. Stevenson if he recognized Prosecution Exhibit 10, the previously excluded page two of Prosecution Exhibit 5. The military judge immediately called for a session under Article 39(a), UCMJ, 10 U.S.C. § 839(a)(2002).

In response to the military judge's questioning, assistant trial counsel stated that he thought the military judge excluded the photograph "[b]ecause there was no time frame set as to when the photo was taken." The military judge reminded assistant trial counsel that he excluded the photograph "[b]ecause it wasn't connected to findings." Assistant trial counsel apologized and noted that the members had not seen the exhibit. The military judge admonished assistant trial counsel for "overstep[ping] [his] bounds," but noted that he did not believe there was "any malice intended at all." The military judge then instructed trial counsel to monitor his assistant counsel.

Defense counsel moved for a mistrial under Rule for Courts-Martial 915. The prosecution opposed the motion, stating that the assistant trial counsel's actions were "due to inexperience and probably a lack of guidance" but were not deliberate. Defense counsel argued that the issue on the motion for mistrial was prejudice, rather than whether the actions were innocent or willful.

In denying the motion, the military judge noted that counsel had Prosecution Exhibit 10 for Identification, which was formerly page 2 of Prosecution Exhibit 5 for Identification, facing away from the court members. The military judge added that he did not "find anything even close to a standard for a mistrial," and that he intended to give a further instruction reminding the members that Prosecution Exhibit 10 for Identification was not relevant and would be withdrawn.

With respect to the challenged opening statement, the military judge stated that typically in opening statements there is some argument that is elicited from each side, and that as opposed to a deliberate disregard for the court's rulings or defense counsel's objections, assistant trial counsel's actions were the result of inexperience. The military judge concluded that his prior instruction to the court members, as well as an additional instruction when they returned, were more than adequate to give the court members the accurate perception of the court's view to assistant trial counsel's actions, and that nothing had occurred to cast substantial doubt upon the fairness of the proceeding. The military judge then instructed the court members to disregard any mention of Prosecution Exhibit 10, as it was not relevant and was withdrawn.

The prosecution presented testimony from Special Agent (SA) Alan Adair concerning the investigation. On October 1, 1998, he

8

conducted a surveillance of Appellant's dormitory building, and
videotaped Appellant's actions.  Trial counsel asked SA Adair
how he videotaped Appellant.  Special Agent Adair testified that
he was in the Security Police building and was filming through
the window blinds.  He explained that the building he was
observing contained Airman Fulton's old dormitory room, and then
stated that Airman Tabois also lived in that area.  The military
judge called an Article 39(a) session, and chastised trial
counsel for not adequately instructing his witness to avoid
mentioning Airman Tabois in accordance with the military judge's
previous evidentiary rulings.  The military judge additionally
required the prosecution to change Prosecution Exhibit 8 by
redacting all names other than A1C Smallwood.

Special Agent Adair also testified that he interviewed
Appellant for a second time on August 20, 1998, and that
Appellant changed his statement and said he was involved in the
situation at the Whataburger.  Trial counsel asked SA Adair to
describe what Appellant said happened after the shooting.
Special Agent Adair testified that Appellant told him they went
back to the Normandy Apartments.  Special Agent Adair then said
that Appellant moved to "the passenger side of the vehicle and
allowed Airman Fulton to drive, because he was not a licensed
driver in the State of Texas."  Defense counsel objected and

asked for an Article 39(a) session.  Trial defense counsel then renewed his motion for a mistrial.

The military judge admonished trial counsel again for the witness's testimony about things he previously ruled inadmissible.  However, the military judge denied the motion for a mistrial, noting the absence of manifest injustice and stating that he would give a curative instruction, would allow cross-examination of the witness and questions by court members, and would not permit redirect examination.  He further explained that while counsel's actions certainly amounted to gross negligence, they failed to cast substantial doubt upon the fairness of the proceeding.  The military judge expressly said that he did not find any intentional disregard for his prior evidentiary rulings.

Our second task on appeal is to determine whether the military judge erred in failing to grant a mistrial on the grounds of prosecutorial misconduct.  Relief for a military judge's failure to grant a mistrial is available only upon clear evidence of abuse of discretion.  United States v. Taylor, 53 M.J. 195, 198 (C.A.A.F. 2000) (citing United States v. Dancy, 38 M.J. 1, 6 (C.M.A. 1993)).  The military judge in this case did not abuse his discretion in failing to grant a mistrial for prosecutorial misconduct.

Prosecutorial misconduct is generally defined as "action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon."  United States v. Meek, 44 M.J. 1, 5 (C.A.A.F. 1996).  In Smith v. Phillips, 455 U.S. 209, 219 (1982), the Court opined that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  Accordingly, courts should gauge the overall effect of counsel's conduct on the trial, and not counsel's personal blameworthiness.  Id. at 220.  In stressing assistant trial counsel's inexperience and nervousness, as well as the unintentional nature of the assistant trial counsel's errors, the military judge in this case misdirected some of his attention to the personal culpability of the prosecutor.

Nevertheless, the judge ultimately reached the proper result, correctly noting that a mistrial is a drastic remedy to be used only sparingly to prevent manifest injustice.  United States v. Rushatz, 31 M.J. 450, 456 (C.M.A. 1990).  A mistrial is appropriate only "whenever circumstances arise that cast substantial doubt upon the fairness or impartiality of the trial."  United States v. Barron, 52 M.J. 1, 4 (C.A.A.F. 1999) (quoting United States v. Waldron, 15 C.M.A. 628, 631, 36 C.M.R.

11

126, 129 (1966)).  In ruling on a mistrial motion, the  military judge should examine the timing of the incident, the identity of the factfinder, the reasons for a mistrial, and potential alternative remedies.  United States v. Harris, 51 M.J. 191, 196 (C.A.A.F. 1999) (citing United States v. Donley, 33 M.J. 44, 47 (C.M.A. 1991)).  Most importantly, the military judge should consider the "desires of and the impact on the defendant."  Id.

The ameliorative actions of the military judge in the present case secured the fairness and impartiality of the trial. The military judge gave the members several curative instructions that effectively distinguished counsel's arguments from true evidence, emphasized the merely descriptive role of opening statements, and directed the members to disregard counsel's mention of withdrawn exhibits.  Absent evidence to the contrary, court members are presumed to comply with the military judge's instructions.  Tennessee v. Street, 471 U.S. 409, 415 (1985); Lakeside v. Oregon, 435 U.S. 333, 340 n.11 (1978); United States v. Holt, 33 M.J. 400, 403 (C.M.A. 1991); Rushatz, 31 M.J. at 456.  While instructions alone may not cure all instances of misconduct, given the overall effect of counsel's conduct in this case, the military judge's timely remedial actions prevented the manifest injustice that would necessitate a mistrial.  In the clear absence of manifest injustice, the

military judge did not abuse his discretion by denying the defense's motion for mistrial.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.