UNITED STATES, Appellee

v.

Charles C. HORNBACK, Private
U.S. Marine Corps, Appellant

No. 13-0442

Crim. App. No. 201200241

United States Court of Appeals for the Armed Forces

Argued January 13, 2014

Decided March 6, 2014

STUCKY, J., delivered the opinion of the Court, in which ERDMANN
and RYAN, JJ., joined.  BAKER, C.J., filed a dissenting opinion,
in which OHLSON, J., joined.  OHLSON, J., filed a dissenting
opinion in which BAKER, C.J., joined.


Counsel


For Appellant:  Lieutenant David C. Dziengowski, JAGC, USN
(argued).


For Appellee:  Colonel Stephen C. Newman, USMC (argued); Brian
K. Keller, Esq. (on brief).


Military Judge:  Stephen F. Keane


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Hornback, No. 13-0442/MC

Judge STUCKY delivered the opinion of the Court.

We granted review to consider whether trial counsel's conduct constituted prosecutorial misconduct, and if so, whether Appellant's substantial right to a fair trial was materially prejudiced. We hold that significant prosecutorial misconduct occurred, but that the error was ultimately not prejudicial. We therefore affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals.

## I. Posture of the Case

Contrary to his pleas, Appellant was convicted by a panel of members sitting as a special court-martial of one specification each of using "spice," signing a false official statement, and larceny of military property, in violation of Articles 92, 107, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 921 (2012). He was acquitted of five other specifications including wrongfully using Xanax, larceny, solicitation, using provoking speech, and communicating threats, in violation of Articles 92, 121, and 134, UCMJ, 10 U.S.C. §§ 892, 921, 932 (2012). The convening authority approved the adjudged sentence of a bad-conduct discharge and three months of confinement, and the United States Navy-Marine Corps Court of Criminal Appeals affirmed. United States v. Hornback, No. NMCCA 201200241, 2013 CCA LEXIS 114, at *13, 2012 WL 7165301, at *5 (N-M. Ct. Crim. App. Feb. 21, 2013).

## II.  Background

During the Government's case-in-chief, trial counsel called eleven witnesses.  The first witness, Lance Corporal (LCpl) Powers, testified that Appellant asked her if she smoked spice, showed her a container of what he said was spice, and proceeded to smoke the substance that he said was spice from a pipe.  The second witness, Karen Carney, testified that Appellant showed her a jar of what looked like marijuana, but Appellant said was spice.  She testified that Appellant told her that spice "[g]ets you high like marijuana," but "[d]oesn't show up on a drug test."  She further testified that she "smoked a hit" of the substance Appellant identified as spice, and watched Appellant smoke the rest of it.  She also testified as to a second occasion that she saw Appellant smoke a pipe loaded with the substance he identified as spice.

No objectionable testimony was elicited from these first two witnesses.  The rest of the witnesses, however, proved quite problematic for trial counsel.  Trial counsel first questioned LCpl Teets regarding Appellant's knowledge of the effects of spice and asked whether Appellant ever asked LCpl Teets to use drugs.  Although defense counsel objected on the bases of speculation and improper lay opinion, the military judge called an Article 39(a), UCMJ, session and questioned trial counsel about the admissibility of the testimony under Military Rule of

Evidence (M.R.E.) 404(b).  The military judge asked, "was that uncharged misconduct, 404(b), with reference to the spice[?]  I mean, what was the purpose of asking that witness about all that first background?  He didn't smoke spice with this witness, did he?"  Defense counsel did not object on M.R.E. 404(b) grounds, however, and the military judge overruled the stated objection. Later during LCpl Teets's testimony, the military judge called a second Article 39(a), UCMJ, session, during which he cautioned trial counsel to "make sure you are staying away from" character evidence.

The next witness was Gunner's Mate Third Class (GM3) Robidart, a friend of Appellant's wife.  Trial counsel asked whether Appellant's wife ever spoke about their marriage to her or told GM3 Robidart anything about why she and Appellant were separated, apparently in an attempt to elicit testimony that Appellant was using drugs.  Defense counsel objected on the grounds of relevance and improper character evidence.  The military judge called another Article 39(a), UCMJ, session.  The military judge explained that "[y]ou can't just put out there that he used drugs at some point.  You have to factor it in to the period charged, right?"  The objection was sustained and the members returned.

Trial counsel continued to question GM3 Robidart, this time asking, "did [Appellant] say anything that might make you

believe he was speaking from personal experience with drugs?"

The military judge sua sponte called another Article 39(a),

UCMJ, session, discussing the problem with trial counsel:

> MJ:  I am concerned that you are getting into what
> would be 404(b) evidence or other acts evidence.
> We've got to narrow this down. I don't know what time
> period we're talking about.  That fact that he used
> drugs before, you know, if he was having conversations
> about using drugs outside the charged time period I
> don't want that going to the members.  I mean you can
> make an objection about that.
>
> . . . .
>
> I don't want to hear any testimony about drug use --
> the accused admitting to drug use -- unless it is the
> accused admitted to drug use during the charged
> period.  Okay?
>
> TC:  Yes, sir.
>
> MJ:  All right.  So first orient to the charged
> period.  I don't want there to be the possibility that
> there was drug use before or after the charged period
> being admitted into evidence.  That would be
> inadmissible.  All right?
>
> TC:  Yes, sir.
>
> DC:  And, Your Honor, I would also ask that it be to
> the substances charged.  I believe there may be an
> allegation of ecstasy.
>
> MJ:  Exactly.  And, yeah, I don't want just drug use,
> coke, cocaine, ecstasy, heroin, marijuana.  I want the
> drug.  I want it specified to the drug and during the
> time period if he has made an admission to that. . . .

The military judge then provided trial counsel the opportunity

to question GM3 Robidart outside the presence of members.  Trial

counsel took the opportunity, and following the questioning,

defense counsel objected on the bases of hearsay and speculation. The military judge sustained the objection and reviewed the limits of hearsay with trial counsel.[1] Trial counsel responded that she was trying to elicit circumstantial evidence that the accused was someone who may have used drugs, based on his familiarity with drugs. The military judge responded once again that that would be impermissible character evidence, stating, "I mean if someone is charged with using marijuana, you can't come in here and start eliciting testimony or evidence that, you know, he's been around marijuana or he knows things about marijuana. I mean its impermissible character or other acts evidence."

The members returned, and after one proper question, trial counsel asked GM3 Robidart, "[w]hat was his personality like?" Defense counsel objected, and the military judge again sent the members back out. This time, the military judge went so far as to specifically tell trial counsel what questions she could ask.[2]

---

[1] The MJ explained:

> [A]ny statement his wife made to her is hearsay. It is not admissible. Any statements [LCpl Teets] made to her is hearsay regarding the accused [sic] drug use. That is not admissible.

[2] The MJ explained:

> Here is how this should go. How often did you see the accused? Did you interact with him on a daily basis? Were you able to observe the way he acted at work?

The members reentered the courtroom, and after one transcribed page of questioning, trial counsel again ventured into improper character evidence.  The military judge sua sponte interrupted, stating, "Okay.  Stop this.  Disregard all that testimony.  Strike that from your memory as though you've never heard it.  Can all members follow that instruction?"  The members responded affirmatively.

Trial counsel went on to ask GM3 Robidart about Appellant's use of "any prescription drugs," and GM3 Robidart testified that Appellant said he would "overtake what he was supposed to be taking . . . . [t]o get high."  The military judge sustained defense counsel's objection on M.R.E. 404(b) grounds and instructed the members to disregard the testimony.  Trial counsel continued to ask about unidentified prescription drugs, defense counsel objected, and the military judge called another Article 39(a), UCMJ, session.  After discussing what trial counsel was trying to elicit, the military judge explained, "[t]hat is clearly impermissible evidence.  You can't say that he used drugs -- this drug to get high.  He misused this prescription drug on this occasion in order to get high to prove

---

You don't have to get into the specifics.  How well do you know him?  How long did he work for you, et[]cetera, et[]cetera.  Okay.  Without her talking about the specifics.  Okay.  And then presumably, you have some questions about the change in that.  Is that right?

that he therefore used drugs and other prescription drugs on a separate occasion to get high." The military judge explained why he was striking the testimony:

> My concern here is that you are getting into all these potential bad acts that aren't specific to the charged offenses which would blow this case up. I mean you just can't have that.
>
> . . . .
>
> You need direct evidence that a crime was committed. You can't put all this evidence out there that, yeah, this guy is kind of into drugs and he likes to -- he knows a lot about drugs and he knows a lot about drugs that can't be detected in your system. I mean you have to show evidence that he committed the specific crime on the specific date that you alleged he committed the specific crime. Not that he's a bad guy.

The next Government witness was Lieutenant Commander (LCDR) Terrien, Appellant's doctor. Trial counsel asked about Appellant's prescription for Seroquel, and LCDR Terrien explained that it is a medication for schizophrenia and bipolar conditions. Defense counsel objected, the military judge sustained and instructed the members to disregard the answer. After a few more questions, the military judge sua sponte called an Article 39(a), UCMJ, session. The military judge explained that he was "concerned that the jury's been tainted by hearing evidence that [Appellant] was taking schizophrenia medication." The military judge chided defense counsel for failing to object

8

on privilege grounds, and explained that he would give an instruction after cross-examination.

The testimony of the next two Government witnesses, LCpl Carillo and Gunnery Sergeant (GySgt) French, was also the subject of sustained objections on M.R.E. 404(b) grounds. Each time, the military judge instructed the members to disregard the testimony.

Next, trial counsel called Corporal (Cpl) Morris, Appellant's roommate. After one sustained objection to improper character evidence, trial counsel continued to elicit improper testimony and the military judge called another Article 39(a), UCMJ, session. Again, the military judge explained, "[w]hat you can't do is get into a bunch of evidence that the accused is a druggy and, therefore, he probably used some drug at some point. That's not admissible evidence." The military judge then instructed trial counsel to practice her examination of Cpl Morris outside of the presence of members, explaining:

> MJ: I'm tired of having the members being exposed to basically character evidence that's not admissible. I mean you can't -- I just want to reiterate to you, you can't present evidence that the accused is a druggy; therefore, he probably used drugs. You need to present evidence that he specifically used drugs on a certain day and time.
>
> TC: Yes, sir.
>
> MJ: And a specific drug. Not that he's just a drug abuser generally and so you should convict him of using drugs. You can't do that.

    TC:  Yes, sir.

    . . . .

    MJ:  You could do that at an ad board.  You can't do
    that in federal court.

After the members returned, trial counsel's examination of Cpl

Morris drew one additional sustained M.R.E. 404(b) objection.

    The Government called three more witnesses during its case-

in-chief.  During the examination of LCpl Kelly, objections to

improper M.R.E. 404(b) evidence and hearsay were sustained, and

during the examination of Chief Warrant Officer 3 (CWO3) Easton,

a hearsay objection was sustained.

    Trial counsel also struggled to avoid statements that the

military judge ruled to be improper character evidence during

her closing argument.  She argued that "[t]he accused is like a

criminal infection that is a plague to the Marine Corps."

Defense counsel objected on M.R.E. 404(b) grounds, and the

military judge sustained the objection.  Shortly thereafter,

trial counsel again argued, "[h]e became that criminal

infection."  Defense counsel objected and the military judge

sustained the objection.  Trial counsel then went on to argue,

"And the command has taken form -- has taken action in the form

of these charges before you.  The government is confident that

you will find him guilty beyond a reasonable doubt."  The

military judge immediately interrupted, stating:

> Hang on a second.
>
> Okay. Members, a couple things.
>
> One, with respect to that last question, you all agree the convening authority is not expecting a certain result in this case, that you're to try the case or decide the issues based on the evidence presented before you, and no one is presuming any certain outcome in this case.
>
> Additionally, throughout the course of this trial and even during closing argument, I sustained several objections to character evidence.
>
> You may not consider any evidence that was the subject of a sustained objection for any purpose, and you may not consider -- those objections related to character evidence, you may not conclude based on any of that evidence that the accused is a bad person or has general criminal tendencies and that he, therefore, committed the offenses charged. You need to base your determination on the admitted evidence in this case and determine if the offenses were committed beyond a reasonable doubt at the specific times and in the specific manners in which they were alleged.

The military judge asked if all members could follow that instruction, and the panel responded affirmatively.

### III. Law

Where proper objection is entered at trial, this Court reviews alleged prosecutorial misconduct for prejudicial error. United States v. Fletcher, 62 M.J. 175, 179 (C.A.A.F. 2005) (citing Article 59, UCMJ, 10 U.S.C. § 859 (2000)). Most of the alleged misconduct in this case was either objected to at trial,

11

or the subject of a sua sponte interruption by the military judge.[3]

Prosecutorial misconduct occurs when trial counsel "'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" Id. at 178 (quoting Berger v. United States, 295 U.S. 78, 84 (1935)). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." United States v. Meek, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing Berger, 295 U.S. at 88).

The presence of prosecutorial misconduct does not necessarily mandate dismissal of charges or a rehearing. "It is not the number of legal norms violated but the impact of those violations on the trial which determines the appropriate remedy for prosecutorial misconduct." Id. at 6. In determining whether prejudice resulted from prosecutorial misconduct, this Court will "look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial." Fletcher, 62 M.J. at 184 (quoting

---

[3] Appellant argues that additional instances of misconduct occurred during trial counsel's opening statement and closing argument, but were not objected to at trial. We conclude that Appellant has not shown that these instances constitute plain error.

12

Meek, 44 M.J. at 5).  This Court has identified "the best approach" to the prejudice inquiry as requiring the balancing of three factors:  "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction."  Id.  "In other words, prosecutorial misconduct by a trial counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone."  Id.

## IV.  Discussion

### A.  Did prosecutorial misconduct occur?

Trial counsel repeatedly and persistently elicited improper testimony, despite repeated sustained objections as well as admonition and instruction from the military judge.  Other courts of appeals have held that repeated violations of rules of evidence can constitute prosecutorial misconduct.  See, e.g., United States v. Crutchfield, 26 F.3d 1098, 1103 (11th Cir. 1994) (finding prosecutorial misconduct in repeated violation of Federal Rules of Evidence 404, 608, and 609, where such violations "continued even after the court instructed the prosecutor as to their impropriety"); Beck v. United States, 33 F.2d 107, 114 (8th Cir. 1929) (finding prosecutorial misconduct where the prosecutor continued to ask improper questions after

sustained objections, reasoning, "there is no excuse for offending twice, after the court has ruled upon the matter"). We find that trial counsel's repeated and persistent violation of the Rules for Courts-Martial and Military Rules of Evidence constitutes prosecutorial misconduct in this case. See Meek, 44 M.J. at 5 (defining prosecutorial misconduct as "violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon"); Rule for Court-Martial (R.C.M.) 502(d)(5) Discussion (trial counsel should be prepared to "make a prompt, full, and orderly presentation of the evidence at trial," and consider the Military Rules of Evidence). It matters not that trial counsel seems to have been merely inexperienced, ill prepared, and unsupervised in this case. Although one may wonder what her supervisors were doing during the course of Appellant's trial, the prosecutorial misconduct inquiry is an objective one, requiring no showing of malicious intent on behalf of the prosecutor, and we find none here.

B.  Did Appellant suffer prejudice?

To determine whether Appellant suffered prejudice to a substantial right from the misconduct, this Court considers the Fletcher factors:  "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction."  62 M.J. at 184.

14

The prosecutorial misconduct in this case was sustained and severe. Trial counsel attempted to elicit improper testimony from nearly every witness called during the Government's case-in-chief, and made arguably improper argument during her closing argument. She repeatedly appeared unable to either understand or abide by the military judge's rulings and instruction during the two-and-a-half day trial on the merits. As a result of this pervasive impropriety, we find that the first Fletcher factor weighs in Appellant's favor.

When we consider curative measures, however, the military judge appears to have left no stone unturned in ensuring that the members considered only admissible evidence in this case. He called multiple Article 39(a), UCMJ, sessions to prevent tainting the panel. He issued repeated curative instructions to the members, each time eliciting that they understood and would follow his instructions. He also issued a comprehensive instruction during trial counsel's closing argument, again explaining that the members could not consider evidence that was the subject of a sustained objection for any purpose. The military judge acted early and often to ameliorate trial counsel's misconduct. Compare United States v. Thompkins, 58 M.J. 43, 47 (C.A.A.F. 2003) (holding that "[t]he ameliorative actions of the military judge . . . secured the fairness and impartiality of the trial" where the military judge engaged in

15

timely remedial actions including curative instructions to members), with Fletcher, 62 M.J. at 185 (finding the military judge's curative efforts to be "minimal and insufficient" where he gave only a generic limiting instruction, chastised trial counsel on a single occasion, and failed to sua sponte interrupt trial counsel). Here, the military judge acted effectively to secure the fairness of Appellant's trial by protecting the panel from potentially improper evidence and issuing curative instructions when appropriate. This factor weighs heavily in the Government's favor.

Turning to the third Fletcher factor, Appellant stands convicted of signing a false official statement, larceny, and using spice. The false official statement conviction arose from signing a false record stating that he was not married to a military member, when in fact he was. The larceny conviction is based on the amount of Basic Allowance for Housing (BAH) he was overpaid as a result of the false statement. The evidence of these two convictions was strong. Trial counsel presented documentary evidence of the false record with Appellant's signature, as well as testimony by the officer in charge of service records at Appellant's base, CWO3 Easton, who explained the workings of the dependency forms. As for the larceny, trial counsel submitted BAH documents showing the amount Appellant was paid by the Government while receiving BAH at the with-

16

dependents rate, plus additional testimony by CWO3 Easton explaining the process. Moreover, the improper character evidence that trial counsel sought to elicit in this case related to the drug offenses; it did not implicate the larceny or false official statement offenses. For these specifications, the strength of the evidence weighs heavily in the Government's favor.

The evidence supporting the spice conviction was not as strong as that supporting the larceny and false official statement convictions, but it was substantial. As Appellant points out, there was no drug test, and the military judge commented on the weakness of some of the evidence trial counsel attempted to submit. Nonetheless, the first two witnesses established that they saw Appellant smoking a substance that he identified to them as spice. Furthermore, the military judge instructed the panel to disregard the improper testimony elicited by trial counsel, and "[a]bsent evidence to the contrary, court members are presumed to comply with the military judge's instructions." Thompkins, 58 M.J. at 47. There is no evidence here that the members failed to comply with the military judge's instructions in convicting Appellant of the spice offense. To the contrary, and despite the clumsy attempts by the trial counsel to elicit improper character evidence related to drug use generally, the fact that the panel acquitted

Appellant of other, weaker drug charges indicates that it took the military judge's instructions to disregard impermissible character evidence seriously.

Balancing these factors, we are confident that the members convicted Appellant on the basis of the evidence alone. The Appellant was not prejudiced by trial counsel's misconduct in this case. Accordingly, the judgment of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. Hornback, No. 13-0442/MC

BAKER, Chief Judge, with whom OHLSON, Judge, joins (dissenting):

I agree with the majority that prosecutorial misconduct occurred, which is the rubric used to describe the repeated improper questioning and comment exhibited in this case. I also agree that the proper method for determining whether such misconduct was prejudicial to a substantial right is through application of the factors outlined in United States v. Fletcher, 62 M.J. 175, 184 (C.A.A.F. 2005). However, for the reasons I stated below, I respectfully dissent in this case. Furthermore, I join Judge Ohlson's dissent in this case.

As the Supreme Court stated in Smith v. Phillips, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. . . . [T]he aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." 455 U.S. 209, 219 (1982) (citations and internal quotation marks omitted). The essential question is not whether trial counsel's conduct was improper, but whether it resulted in "a failure to observe that fundamental fairness essential to the very concept of justice." Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974) (citation and internal quotation marks omitted).

United States v. Hornback, No. 13-0442/MC

I agree that the prosecutorial misconduct in this case was sustained. There were eighteen instances of impermissible evidence coming before the members. Twelve of these involved improper character evidence. The military judge also sustained three relevance objections, two hearsay objections, and one objection on the grounds of psychotherapist-patient privilege. In addition, during closing argument, trial counsel improperly invoked the convening authority. The misconduct was also severe. As noted, the majority of improper conduct involved the introduction of character evidence. Character evidence is particular anathema to U.S. notions of fair trial, running the risk as it does that members may be swayed to convict not on the basis of evidence, but because the defendant is a bad person deserving of punishment. Thus, it is in evaluating the final two Fletcher factors where I break with the majority. Upon analyzing all three factors, I believe that the correct conclusion is that Appellant did not receive a fair trial, as I am not convinced on this record that members convicted Appellant on the basis of admissible evidence alone.

Measures Adopted to Cure the Misconduct

It is evident that the military judge attempted to neutralize any prejudice resulting from trial counsel's conduct. As documented by the majority, his interjections were frequent and forceful. He called numerous Article 39(a), Uniform Code of

Military Justice (UCMJ), 10 U.S.C. § 839(a) (2012), sessions in which he instructed trial counsel as to what was and was not admissible.  In addition, the military judge delivered curative instructions on most, though not all, occasions when improper evidence did come before the members.[1]

This Court has determined that, absent evidence to the contrary, it will presume that members follow a military judge's instructions.  United States v. Taylor, 53 M.J. 195, 198 (C.A.A.F. 2000).  However, this case begs the question:  when is too much, too much?  The Supreme Court, in Donnelly, also established that curative instructions are not in fact cure-alls, noting that "some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect."  416 U.S. at 644.  This notion that a curative instruction is not automatically assumed sufficient to remedy all misconduct is echoed in a number of circuit court decisions, including from the United States Courts of Appeals for the Third, Ninth, and Eleventh Circuits.  Moore v. Morton, 255 F.3d 95, 119-20 (3d Cir. 2001); United States v. Weatherspoon, 410 F.3d 1142, 1152 (9th Cir. 2005); United States v. Kerr, 981 F.2d 1050, 1054 (9th Cir. 1992); United States v. Simtob, 901 F.2d

---

[1] It is hard to find fault with the military judge's actions, especially in the absence of a motion for a mistrial.  However, this case does prompt the question:  at what point should a military judge sua sponte declare a mistrial or call in the supervising trial attorney?

3

799, 806 (9th Cir. 1990); United States v. Crutchfield, 26 F.3d 1098, 1103 (11th Cir. 1994).

Despite repeated instructions from the military judge about what sort of evidence was proper, trial counsel solicited impermissible evidence -- evidence that came before members -- that Appellant claimed he had used prescription drugs to get high, that he had been accused of stealing a motorcycle, that he had been prescribed medication used to treat schizophrenia, that he had a history of nonjudicial punishments, that he failed to pay his rent, that possible drug paraphernalia was found in his room, and that his behavior had been angry and erratic. In the presence of the members, trial counsel committed often multiple violations of numerous rules of evidence including Military Rule of Evidence (M.R.E.) 402 (relevance), M.R.E. 404 (character evidence), M.R.E. 513 (psychotherapist-patient privilege), and M.R.E. 802 (hearsay); she invoked the convening authority in violation of Article 37, UCMJ, 10 U.S.C. § 837 (2012); and she impermissibly made arguments in closing calculated to inflame passions and prejudices. Rule for Courts-Martial (R.C.M.) 919(b) Discussion.

Given the extent, pervasiveness, and character of the prosecutor's improper questions and comments, looking at the context of the entire trial, I believe that the curative instructions were not sufficient to counteract the impermissible

material that leaked in.  The critical question is not whether the military judge delivered curative instructions but whether they were enough to ensure that members did indeed make their decision based solely on the evidence, not on the basis that Appellant was a bad person.

The Weight of Evidence Supporting Conviction

Appellant was ultimately convicted of three out of eight specifications:  wrongful use of spice (Article 92, UCMJ), making a false official statement (Article 107, UCMJ), and larceny of military property (Article 121, UCMJ).  I agree with the majority that the evidence supporting the later two convictions was strong.  In addition, very little of the prosecutorial misconduct touched upon the larceny and false official statement charges.

However, the evidence supporting the spice charge was weaker and largely circumstantial.  Two witnesses, Karen Carney and Lance Corporal Kimberly D. N. Powers, testified that they saw Appellant smoke something in a glass pipe that he told them was spice.  Ms. Carney also took one hit of the substance Appellant was smoking but stopped there, as she did not like the taste, and she felt none of its effects.  There was no drug test, no analysis of the substance Appellant called spice, and no testimony as to the characteristics or effects of smoking spice.  Aside from this, the Government included some highly

5

circumstantial evidence solicited from Lance Corporal Joshua N. Teets. Teets testified that Appellant told him spice could not be detected in a drug test, the inference being Appellant knew so much about spice because he had smoked it. Also of note is the fact that the Marine Corps regulation banning the use of spice describes it as "a mixture of medicinal herbs laced with synthetic cannabinoids or cannabinoid mimicking compounds" and forbids the actual or attempted possession or use of any "derivative, analogue, or variant" of the substance. Dep't of Defense, U.S. Marine Corps Forces, Pacific Order 5355.2A, Prohibited Substances para. 1-3.b. (July 30, 2010). This description is narrow enough that it is feasible members could find that possession and use of an untested substance that Appellant simply called spice did not provide sufficient evidence that Appellant actually used or possessed a variety of spice covered by this order.

In addition, much of the improper evidence that came before the members did touch upon the drug charges, including Gunner's Mate 3 Malaea Robidart's testimony that she had overheard drug-related conversations having to do with Appellant and that he told her he used prescription medications to get high, Corporal P. Kelly's testimony that he found a glass bowl in Appellant's room, testimony referencing Appellant's behavior changes including recent angry and sporadic behavior, reference to the

disintegration of Appellant's marriage possibly due to drug-related issues, and evidence indicating his overall poor character, including a history of previous nonjudicial punishments.  This could be enough to convince members that Appellant was the type of person who would do drugs and tip any doubts they had in the "beyond reasonable" direction.

Though he ultimately denied Appellant's R.C.M. 917 motion to dismiss, the military judge himself commented about the shakiness of the spice charge.  "I'm sensitive to the situation that you're in where you don't have good evidence to convict the guy of what you believe he did, but that's the American judicial system."  Overall, the Government's case on the spice charge was weak, as the military judge noted.  Thus it is conceivable the prosecutor's misconduct swayed members towards a conviction they might not otherwise have made.  In context, the fact that members acquitted on five of eight charges can cut both ways.  It can suggest that members carefully followed the military judge's instruction.  But it can also suggest that members found the Government's case close and were open to persuasion, in which case character evidence may have made a difference, either directly or indirectly, by giving members a margin of comfort that, even if there was doubt, Appellant deserved what he got.

Trial counsel's misconduct was not "slight or confined to a single instance, but . . . pronounced and persistent, with a

probably cumulative effect upon the jury which cannot be regarded as inconsequential." Fletcher, 62 M.J. at 185 (alteration in original) (citation and internal quotation marks omitted).  Trial counsel did commit prosecutorial misconduct and the scope and pervasiveness of that misconduct was sufficient to interfere with Appellant's substantial right to a fair trial.  Although the prejudice is clearest with respect to the spice charge, in light of the pervasive nature of the misconduct, I would set aside the changes and authorize a rehearing on all charges.  Therefore, I respectfully dissent.

OHLSON, Judge, with whom BAKER, Chief Judge, joins (dissenting):

I concur with the majority's observation that the trial counsel "repeatedly and persistently elicited improper testimony, despite repeated sustained objections as well as admonition and instruction from the military judge."  I also concur with the majority's determination that the trial counsel's actions constituted prosecutorial misconduct.  Where I differ is on the question of whether the trial counsel's "significant," "repeated," "pervasive," "sustained," "persistent," and "severe" misconduct materially prejudiced Appellant's right to a fair trial.  I believe it did.

I readily acknowledge that the military judge in this case repeatedly gave curative instructions to the panel in most of the many instances where the trial counsel engaged in prosecutorial misconduct, and that he also appropriately provided the panel with a comprehensive instruction at the end of the court-martial explaining to the members that they could not consider evidence that was the subject of sustained objections.  Further, I concede that "[a]bsent evidence to the contrary, court members are presumed to comply with the military judge's instructions."  United States v. Thompkins, 58 M.J. 43, 47 (C.A.A.F. 2003).  However, I also note that, consistent with this Court's precedent, "[P]rosecutorial misconduct by a trial

counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." United States v. Fletcher, 62 M.J. 175, 184 (C.A.A.F. 2005) (emphasis added).  In my view, such is the case here.

As documented by the majority, during this court-martial trial counsel engaged in prosecutorial misconduct virtually from start to finish.  In her opening statement, case-in-chief, closing argument, and sentencing argument, trial counsel either injected improper character evidence (which is of particularly grave concern), elicited improper hearsay evidence, or made improper arguments.  (For example, trial counsel opined to the panel members:  "The accused is like a criminal infection that is a plague to the Marine Corps.")  Indeed, even by the Government's own accounting, trial counsel's actions prompted the military judge to sustain defense counsel's objections fifteen times, give the panel members curative instructions seven times, and convene Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), sessions to discuss objectionable material four times.[1]

---

[1] The nagging -- if unspoken -- question in this case is, "Where was the chief of justice?"  As noted by the majority, trial counsel appeared to be not only "inexperienced" but also "unsupervised," and she "repeatedly appeared unable to either understand or abide by the military judge's rulings and instructions."  The issue of why this trial counsel did not

The military judge's admonishments to trial counsel during the course of this court-martial are also quite telling. For example:

- MJ:  "I'm tired of having the members being exposed to basically character evidence that's not admissible."

- MJ:  "My concern here is that you are getting into all these potential bad acts that aren't specific to the charged offenses, which would blow this case up."

- MJ:  "I am concerned that the jury's been tainted by hearing evidence that [the Accused] was taking schizophrenia medication."

- MJ: "What you can't do is get into a bunch of evidence that the accused is a druggy and, therefore, he probably used some drug at some point."

The attentiveness of the military judge to trial counsel's repeated prosecutorial misconduct was admirable, and his admonishments and attempted remedial measures were appropriate. Ultimately, however, they were not sufficient. I echo the sentiments of the United States Court of Appeals for the

_____

receive the level of supervision, guidance, assistance, instruction, and training that she so obviously needed is not a matter before this Court. However, I find it appropriate to note that the responsibility to protect a servicemember's constitutional right to a fair trial does not rest solely with the lone trial counsel advocating in the courtroom; it extends to the chief of justice and to other supervisory officers as well.

Eleventh Circuit in United States v. Crutchfield:  "When improper inquiries and innuendos permeate a trial to such a degree as occurred in this case, [I] do not believe that instructions from the bench are sufficient to offset the prejudicial effect suffered by the accused."  26 F.3d 1098, 1103 (11th Cir. 1994).

On this record I "cannot be confident that the members convicted the appellant on the basis of the evidence alone." Fletcher, 62 M.J. at 184.  Therefore, I respectfully dissent and would authorize a rehearing on all charges.