# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 37249 (reh)**

———————————

**UNITED STATES**
Appellee

**v.**

**Edward T. HUDSON**
Captain (O-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 7 July 2017

———————————

*Military Judge:* Wendy L. Sherman (arraignment); Natalie D. Richardson (trial).

*Approved sentence:* Dismissal and confinement for 3 years. Sentence adjudged 27 March 2015 by GCM convened at Joint Base San Antonio–Randolph, Texas.

*For Appellant:* Zachary Spilman, Esquire (argued); Major Thomas A. Smith, USAF; Captain Patricia Encarnación Miranda, USAF.

*For Appellee:* Major Tyler B. Musselman, USAF (argued); Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before DREW, J. BROWN, and MINK, *Appellate Military Judges.*

Senior Judge J. BROWN delivered the opinion of the court, in which Chief Judge DREW and Judge MINK joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

J. BROWN, Senior Judge:

A panel of officers sitting as a general court-martial found Appellant, contrary to his pleas, guilty of divers indecent acts with a child in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2005). The court members sentenced Appellant to a dismissal and three years of confinement. The convening authority approved the adjudged sentence.

Appellant asserts eight assignments of error:[1] (1) improper admission of uncharged allegations of child molestations involving a second child; (2) military judge's failure to grant mistrial; (3) prosecutorial misconduct during opening statement and findings argument; (4) improper sentencing argument; (5) military judge's erroneous exclusion of a Defense exhibit based upon lack of authentication; (6) ineffective assistance of counsel; (7) factual sufficiency; and (8) cumulative error. We find no prejudicial error and affirm.

## I. BACKGROUND

In July 2004, Appellant and his new wife moved to San Antonio, Texas, where he was assigned to a training squadron at Randolph Air Force Base. While living there, they maintained a relationship with CG, his new wife's niece. Appellant also had a biological daughter from a prior marriage that would occasionally come to visit him and his new wife. CG and Appellant's biological daughter became friends.

During one such visit, CG told Appellant's biological daughter that Appellant had recently touched her inappropriately. At the time, CG was approximately 8–9 years old. Appellant's biological daughter was approximately 13 years old. Appellant's biological daughter returned home and, eventually, Appellant's ex-wife learned of the allegation. Appellant's ex-wife ultimately reported the accusation to child protective services.

In 2005, after being notified by child protective services, agents with the Air Force Office of Special Investigations (AFOSI) initiated an investigation. During the course of this investigation, investigators learned that MP, the daughter of Appellant's ex-wife, had also previously alleged that Appellant had inappropriately touched her. This prior incident purportedly occurred in 2000 or 2001, when MP was approximately 8–9 years old and while Appellant and his ex-wife were in the process of a divorce. At the time that these allegations

---

[1] Appellant also alleges that the military judge's instruction defining reasonable doubt was error. Appellant did not object to this instruction at trial. Our superior court has subsequently resolved this issue adverse to Appellant. *See United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017) (finding no plain error where a military judge provided the instruction without defense objection).

first came to light, local authorities elected not pursue charges against Appellant.

The allegations involving CG and MP initially went to trial in December 2007, and Appellant was convicted of both. Following the conviction, however, the convening authority agreed, as part of a post-trial agreement, to set aside the child molestation offense involving MP because the statute of limitations had expired prior to trial. The convening authority then approved the findings of guilty as to the indecent acts involving CG and reduced the adjudged sentence.

During the subsequent appeal of the offense involving CG, our superior court set aside the conviction because the earlier specification failed to state an offense. *United States v. Hudson*, 72 M.J. 464 (C.A.A.F. 2013) (mem.). That specification omitted language that Appellant's actions were either prejudicial to good order and discipline or service discrediting. Our superior court authorized a rehearing as to the incidents involving CG. *Id*. In June 2014, and in accordance with the remand, the Government re-referred a specification against Appellant covering the prior indecent acts with CG and including the language missing from the prior, faulty specification.

In March 2015, the case again went to trial. CG, now 17 years old, testified to the following events in the first part of 2006, while she was approximately 8–9 years old: (1) in April 2006, following a church picnic, she recalled watching television in Appellant's bedroom and Appellant touched her "private part" with his fingers; (2) later that same day, in Appellant's computer room, she recalled him placing his "private part" on her leg; (3) during Spring Break of 2006, she recalled that she spent the night at Appellant's residence and while there she awoke to find Appellant touching her vaginal area with his fingers and then inserting his fingers into her vagina; and (4) she also generally recalled Appellant licking her vaginal area with his tongue and another occasion where Appellant took her hand and placed it on his "private part."

Though not charged at this trial, the Government also offered testimony from MP, now 24 years old, where she recounted that Appellant indecently touched her when she was approximately 8–9 years old. This prior incident was admitted pursuant to Military Rule of Evidence (Mil. R. Evid.) 414, that permits an earlier offense of child molestation to be considered on any matter to which it is relevant. The Government also provided unrebutted testimony from CG's mother that Appellant called her shortly after the CG investigation began, to ask what the investigation was about and what they had told investigators, and suggested that CG's mother should not cooperate with child protective services because "they are just trying to pin something on somebody."

The Defense countered by arguing that the prior allegation by MP was the result of Appellant's ex-wife conspiring against him, and that once CG learned

of a prior allegation against Appellant, CG falsely claimed that she too was sexually assaulted to earn favor with Appellant's biological daughter. Once CG discovered that Appellant's biological daughter supported Appellant, the Defense argued, CG was unable to take back the false allegation and felt compelled to stick with her earlier falsehoods. The Defense also characterized CG's testimony over the years regarding these allegations as unreliable and inconsistent.

The officer members convicted Appellant of touching CG's vagina with his hands, placing her hand on his penis, and touching her leg with his penis. They acquitted him of licking her vagina.

## II. DISCUSSION

### A. Admission of Prior Uncharged Indecent Acts

Appellant asserts that the military judge erred in permitting the Government to introduce evidence of a prior incident of child molestation by Appellant against his stepdaughter, MP, from a prior marriage. We conclude that the military judge did not abuse her discretion in permitting the Government to introduce, under Mil. R. Evid. 414, an allegation of child molestation that occurred approximately five years prior to the charged offense, involved a similarly-aged child, and occurred under similar circumstances.[2]

Admission of evidence under Mil. R. Evid. 414 requires a two-step process:

> First, the military judge must make three threshold findings: (1) whether the accused is charged with an act of child molestation as defined by [Mil. R. Evid.] 414(a); (2) whether the proffered evidence is evidence of his commission of another offense of child molestation as defined by the rule; and (3) whether the evidence is relevant under [Mil. R. Evid.] 401 and [Mil. R. Evid.] 402.

*United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (citing *United States v. Bare*, 65 M.J. 35, 36 (C.A.A.F. 2007)).

Second, if the three threshold factors are met, the military judge must then apply a balancing test under Mil. R. Evid. 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence. *Id.*; *United States v.*

---

[2] Although the Defense alleged that the military judge erred in also admitting the prior incidents under Mil. R. Evid. 404(b), our determination that it was properly admissible under Mil. R. Evid. 414 moots this issue.

*Wright*, 53 M.J. 476, 482–83 (C.A.A.F. 2000). Although not exhaustive or exclusive, our superior court has identified a list of factors to consider under this balancing test: "[S]trength of proof of prior act—conviction versus gossip; probative weight of evidence; potential for less prejudicial evidence; distraction of factfinder; . . . time needed for proof of prior conduct[;] . . . temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and relationship between the parties." *Id.* (citations omitted); *United States v. Dewrell*, 55 M.J. 131, 138 (C.A.A.F. 2001).

"Inherent in [Mil. R. Evid.] 414 is a general presumption in favor of admission." *United States v. Yammine*, 69 M.J. 70, 74 n.4 (C.A.A.F. 2010). If evidence is admitted under Mil. R. Evid. 414, it "may be considered on any matter to which it is relevant," including propensity. Mil. R. Evid. 414(a); *United States v. James*, 63 M.J. 217, 220 (C.A.A.F. 2006).

As to the uncharged offense, MP alleged that, from 2000 to 2001 when she was 9 years old, Appellant sexually molested her multiple times by putting his hands down her underwear and rubbing her vagina with his fingers, touching her vagina with a vibrator while on his bed, and putting her hand on his penis. At the time, Appellant was married to MP's biological mother. The incidents all occurred in the family home. After the incidents, MP testified that Appellant warned her not to tell anyone or he could get in trouble. In October 2001, MP reported the incidents to her biological mother. MP's mother notified state authorities, but no charges were filed. Although Appellant no longer had visitation with MP after this, he was permitted visitation with his biological daughter.

The charged offense involved CG, the niece of Appellant's current wife. CG often spent time at their home. CG alleged that in 2006, when she was 8–9 years old, Appellant sexually molested her by putting his hands down her underwear and moving his fingers around her genital area, licking her vagina with his tongue, placing her hand on his penis, and touching her leg with his penis. CG related that Appellant warned her not to tell anyone because he could go to jail. All of this purportedly occurred in Appellant's house.

After considering the testimony of MP and the evidence submitted by the parties, the military judge allowed the Prosecution to introduce evidence of the uncharged allegation involving MP under both Mil. R. Evid. 414 and Mil. R. Evid. 404(b). The military judge also concluded that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice to Appellant.

Appellant alleges that this ruling was deficient in four respects: (1) the military judge failed to apply the proper test for relevancy, (2) she erroneously used non-propensity reasons to support admission for propensity purposes, (3) she gave excessive weight to the previous conviction for indecent acts with

MP, and (4) she failed to consider the lack of temporal proximity between the allegations of MP and CG.

### 1. Failure to apply the proper test for relevancy

Mil. R. Evid. 414 requires that the evidence be relevant under Mil. R. Evid. 401 and 402 before it can be admitted under Mil. R. Evid. 414. Although the military judge properly cited these rules, Appellant argues that the military judge incorrectly applied them because she concluded the acts were "nearly identical" and thus relevant. Appellant argues that this conclusion does not answer the question of whether Appellant committed the uncharged allegation. He further argues that the military judge "lump[ed] together a series of alleged incidents" and did not examine the inconsistencies in MP's allegation.

A military judge is required to make a threshold determination that the members could find by a preponderance of the evidence that the prior act of child molestation occurred. Mil. R. Evid. 414. Once this threshold is met, there is "a presumption that other acts of child molestation constitute relevant evidence of predisposition to commit the charged offense." *United States v. Tanner*, 63 M.J. 445, 449 (C.A.A.F. 2006). As this court has recently stated, the relevancy of prior acts of child molestation under Mil. R. Evid. 414 is "all but mandated." *United States v. Walters*, Misc. Dkt. No. 2016-12, 2017 CCA LEXIS 27, at *10–11 (A.F. Ct. Crim. App. 12 Jan. 2017) (unpub. op.) (quoting *United States v. Dewrell*, 52 M.J. 601, 608 (A.F. Ct. Crim. App. 1999), *aff'd* 55 M.J. 131); *see also* 140 CONG. REC. S12,990 (daily ed. 20 Sept. 1994) (statement of Sen. Dole) ("In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sado-sexual interest in children—that simply does not exist in ordinary people.").

In this case, the military judge concluded that the members could "find by a preponderance of the evidence that [Appellant] committed crimes of child molestation upon [MP], specifically touching her genital area with his hand, even considering the defense's forecast of its lengthy impeachment case." This conclusion is amply supported by the record and was not an abuse of discretion.

While not a lengthy dissertation on the reasons why prior acts of child molestation are logically relevant, the military judge's conclusion that the acts were "nearly identical" was a recognition that once she determined the members could find by a preponderance that the indecent acts with MP occurred, the "nearly identical" nature of the abuse made the evidence relevant under Mil. R. Evid. 401 and 402. As to this conclusion, the military judge did not abuse her discretion.

### 2. Non-propensity purposes under Mil. R. Evid. 414

Appellant next argues that the military judge abused her discretion by using non-propensity rationales to support admission the prior child molestation of MP for propensity purposes. In her written ruling, the military judge stated,

> Regarding relevance, the government argues the evidence is of acts nearly identical to the charged offenses committed upon two girls who never met or discussed the events. This is the type of evidence [Mil. R. Evid.] 414 was designed to allow. Moreover, the government provided non-propensity theories of admissibility, stating [MP's] "testimony is not confusing, distracting, or misleading, and it is clear evidence of the Accused's pattern, intent and absence of mistake."

Appellant argues that the last sentence demonstrates that the military judge inappropriately used non-propensity purposes to support the admission of the evidence for propensity purposes. We disagree.

The military judge articulated additional non-propensity reasons that further supported the relevance of these prior incidents to the charged offense. Although commonly used to admit evidence for propensity purposes, evidence admitted under Mil. R. Evid. 414 is not limited to propensity. Rather, the rule provides that admissible evidence "may be considered on any matter to which it is relevant." Pattern, intent, and absence of mistake are recognized non-propensity uses for uncharged misconduct. The other permissible uses for this evidence further support the military judge's conclusion that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members. The military judge did not abuse her discretion by acknowledging the other ways that admission of the prior sexual molestation of MP could be probative and relevant to the members.

### 3. Weight of previous conviction

Appellant next argues that the military judge gave "excessive weight" to the fact that Appellant was previously convicted of indecent acts with MP. Appellant argues that the weight the military judge gave to the prior conviction was "excessive" because she did not properly consider that the convening authority had set aside the conviction and dismissed the specification.

At the time of trial, the military judge was aware of the procedural history of the case and the fact that the convening authority, as part of a post-trial agreement, had set aside the conviction for committing indecent acts with MP. Our superior court has stated that evidence of conviction—as opposed to rumor—is one factor, among many, for the military judge to consider. *Wright*, 53 M.J. at 482–83. Thus, it was appropriate for the military judge give some

weight to the fact that members from the earlier trial, after evaluating the testimony and credibility of MP and the cross-examination by the prior defense counsel, found the accused guilty of those offenses beyond a reasonable doubt. We see nothing to indicate that the weight she gave it was excessive.

### 4. Temporal proximity

Appellant argues that the military judge failed to consider the lack of temporal proximity between the allegations of MP and CG. However, the military judge's written ruling demonstrates that she considered the temporal proximity of the allegations. She stated, "The defense arguments are not persuasive. It presented no evidence that the strength of the evidence is less due to the passage of time." The military judge squarely addressed the temporal proximity a second time in her written ruling stating, "While several years have elapsed, the Court finds no relevant intervening circumstances."

A lack of temporal proximity between the charged offense and evidence sought to be admitted under Mil. R. Evid. 414 may be grounds to exclude the evidence. *United States v. Berry*, 61 M.J. 91, 96–97 (C.A.A.F. 2005). The passage of time alone, however, is not generally grounds to exclude evidence. *Id.*; *Ediger*, 68 M.J. at 251; *see also* 140 CONG. REC. H8,968 (daily ed. 21 Aug. 1994) (statement of Rep. Molinari) ("[E]vidence of other sex offenses by the defendant is often probative and admitted, notwithstanding very substantial lapses of time in relation to the charged offense or offenses."). Moreover, the passage of time is less compelling when it is not also accompanied by intervening circumstances. *United States v. Bare*, 63 M.J. 707, 711–12 (A.F. Ct. Crim. App. 2006), *aff'd* 65 M.J. 35. Additionally, even when the passage of time weighs against admission, the other *Wright* factors may so heavily tip the Mil. R. Evid. 403 balance in the other direction as to favor admission. *See United States v. Richards*, ACM 38346, 2016 CCA LEXIS 285, at *122 (A.F. Ct. Crim. App. 2 May 2016) (unpub. op.).

Although the military judge concluded that there were no intervening factors, we acknowledge that the record of trial could also support the opposite conclusion. Between the alleged molestations, Appellant divorced, remarried, and moved from Florida to Texas. While there is no clear definition of an "intervening circumstance," these major life changes would appear to qualify as such. *But see Berry*, 61 M.J. at 96–97 (discussing intervening circumstances as a change in the developmental state of the appellant). Nevertheless, the military judge did not abuse her discretion in rejecting the Defense's argument that the passage of time warranted exclusion of this evidence. The military judge articulated her Mil. R. Evid. 403 balancing test on the record and in her written ruling. Her conclusion that there was no evidence that the strength of the evidence was less due to the passage of time was not an abuse of discretion. Moreover, other *Wright* factors weighed in favor of admission (strength of proof

of the prior act, no less prejudicial alternatives, no relationship between MP and CG at the time they reported Appellant's misconduct, and the similar circumstances surrounding the abuse of MP and the abuse of CG).

Accordingly, the military judge did not abuse her discretion in admitting this evidence.

**B. Denial of Mistrial**

Appellant asserts that the military judge erred in denying the Defense's request for a mistrial based upon the Government's cursory reference in their opening statement to the statute of limitations. We find that the military judge did not abuse her discretion when she denied the mistrial and instead provided the members with a curative instruction.

Rule for Courts-Martial (R.C.M.) 915(a) governs when a military judge should declare a mistrial. It provides, in part, that "[t]he military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." The discussion relating to R.C.M. 915(a) pertinently provides that "[t]he power to grant a mistrial should be used with great caution, under urgent circumstances, and for plain and obvious reasons. As examples, a mistrial may be appropriate when inadmissible matters so prejudicial that a curative instruction would be inadequate are brought to the attention of the members." "Absent evidence to the contrary, court members are presumed to comply with the military judge's instructions." *United States v. Hornback*, 73 M.J. 155, 161 (C.A.A.F. 2014) (quoting *United States v. Thompkins*, 58 M.J. 43, 47 (C.A.A.F. 2003)). A military judge's ruling on a request for a mistrial is reviewed for clear evidence of an abuse of discretion. *United States v. Ashby*, 68 M.J. 108, 122 (C.A.A.F. 2009).

During the Government's opening statement, the following statement and exchange took place:

> STC: After you hear from [CG], you are going to hear a chillingly similar account of the accused's actions with another little girl, [MP]. You're not going to see [MP] there on the charge sheet in front of you. The legal concept of the statute of limitations they are going to allow certain cases----
>
> CDC: Objection.
>
> MJ: Sustained. Move on.
>
> STC: Yes, Your Honor.
>
> MJ: Members, you are going to disregard any description or comment about statute of limitations. That is not even a player here.

9

STC: Yes, Your Honor.

After trial counsel's opening statement concluded, Appellant moved for a mistrial based on her mention of the statute of limitations. The Government countered, arguing that mention of the statute of limitations was proper because MP understood that her allegations had not been charged because of the statute of limitations, and that the Government intended to illicit this during MP's testimony. The military judge believed that the reference to statute of limitations in the opening statement was improper and that such testimony from MP would not be relevant or admissible. Rather than granting the mistrial, however, the military judge instead proposed the following curative instruction:

> The fact that charges have been referred to this court for trial does not permit any inference of guilt. You heard that yesterday. Also, the fact that an allegation has not been referred to this court does not permit any inference of any kind. I sustained an objection to trial counsel in her opening statement saying the phrase, "statute of limitations." I advise that that is not a player in this case and I told you to disregard that part of government's opening statement. I will not instruct you on the events that led to referral of the charge, but I again state that the statute of limitations was not a player. You must not speculate about why any other allegation was not referred to this court-martial.

The Defense affirmatively agreed that the military judge's proposed curative instruction was satisfactory. The military judge subsequently provided the curative instruction to the members and confirmed that the members understood the instruction and would follow that instruction.

We conclude that the curative measures taken by the military judge were sufficient to eliminate any potential for prejudice. Trial counsel made only a fleeting and incomplete reference to the statute of limitations in their opening statement. Before counsel explained their reference to "statute of limitations" or how this legal term of art purportedly applied to this case, the military judge sustained the Defense objection and instructed the members that it "wasn't even a player here."

After the Defense requested a mistrial, the military judge went further and specifically reaffirmed to the members that they must not speculate why any other allegation was not referred to trial and twice reminded them that the statute of limitations was "not even a player." The Defense agreed that this instruction satisfied their concerns.

Absent evidence to the contrary, members are presumed to follow the military judge's instructions. *United States v. Holt*, 33 M.J. 400, 408 (C.M.A. 1991).

At no further point in the trial was the concept of "statute of limitations" presented to the members, and no member ever inquired about it. The record supports that trial counsel's incomplete reference to an undefined legal principle had no influence whatsoever on the proceedings. The denial of a mistrial was not an abuse of discretion. The instruction cured any error.

For these reasons, we conclude that the military judge did not err in denying the request for mistrial. The curative instructions were sufficient to eliminate any potential for prejudice and the record of trial further confirms Appellant was not prejudiced by trial counsel's reference in the opening statement.[3]

## C. Prosecutorial Misconduct during Findings Argument

Appellant identifies several comments made by trial counsel during findings argument, some objected to and some not, and argues that they constitute improper argument and prosecutorial misconduct. The errors include allegations that trial counsel's findings argument included facts not in evidence, personal attacks on the Defense, impermissible argument invoking the Air Force's training on sexual assault prevention, and erroneously calling upon the members to do "justice" with their verdict. We conclude Appellant is not entitled to relief.

When an objection is entered at trial, we review an allegation of prosecutorial misconduct de novo to determine whether the military judge's ruling constitutes an abuse of discretion. *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citing *Hornback*, 73 M.J. at 159). On the other hand, failure to object at the time of trial results in courts reviewing the behavior or argument for plain error. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007). This rule exists "to prevent defense counsel from remaining silent, making no objection, and then raising the issue on appeal for the first time, long after any possibility of curing the problem has vanished. It is important to encourage all trial participants to seek a fair and accurate trial the first time around." *United States v. Reist*, 50 M.J. 108, 110 (C.A.A.F. 1999) (internal quotation marks omitted).

As to the matters that Appellant failed to object to at trial, we review for plain error, only granting relief if he carries his burden of demonstrating: "(1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005). Improper argument is a question of law that we review de novo. *Sewell*, 76 M.J. at 18.

---

[3] Appellant also asserts that trial counsel's reference to "statute of limitations" in the opening statement constituted prosecutorial misconduct. For the same reasons set forth above, Appellant has failed to demonstrate he was prejudiced by this reference in light of the agreed curative instruction promptly provided by the military judge.

Counsel are to limit arguments to evidence in the record and reasonable inferences that can be drawn from that evidence. *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). While a trial counsel "may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Fletcher*, 62 M.J. at 179 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). "[I]t is error for trial counsel to make arguments that 'unduly . . . inflame the passions or prejudices of the court members.'" *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (omission in original) (quoting *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983)). Trial counsel are also prohibited from injecting into argument irrelevant matters, such as facts not in evidence or personal opinions about the truth or falsity of testimony or evidence. *Id.* at 58; *Fletcher*, 62 M.J. at 179; R.C.M. 919(b), Discussion. To that end, courts have struggled to draw the "exceedingly fine line which distinguishes permissible advocacy from impermissible excess." *Fletcher*, 62 M.J. at 183 (quoting *United States v. White*, 486 F.2d 204, 207 (2d Cir. 1973)).

In evaluating counsel's argument, our decision need not depend on whether any of trial counsel's arguments were, in fact, improper if we conclude Appellant has not met his burden of establishing the prejudice prong of the plain error analysis. *Erickson*, 65 M.J. at 224. The "best approach" to the prejudice determination involves balancing three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Fletcher*, 62 M.J. at 184. We also recognize that the lack of defense objection is some measure of the minimal prejudicial impact of the trial counsel's argument. *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001). In sum, "reversal is warranted only 'when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.'" *Sewell*, 76 M.J. at 18 (quoting *Hornback*, 73 M.J. at 160).

"[A]rgument by a trial counsel must be viewed within the context of the entire court-martial. The focus of [the] inquiry should not be on words in isolation but on the argument as 'viewed in context.'" *Baer*, 53 M.J. at 238 (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)). "[I]t is improper to 'surgically carve' out a portion of the argument with no regard to its context." *Id.*

### 1. Comment—Appellant in Uniform

Appellant asserts that trial counsel improperly argued in findings, over Defense objection, that the members should be afraid of Appellant in uniform and that trial counsel improperly interjected her personal opinion into the court-martial.

During findings argument, trial counsel argued, "Members, the scariest part of the Air Force, to think that someone like the accused is among us. Someone like him as an officer and wears our same uniform . . . ." The defense objected, arguing that the comment was an improper argument invoking emotion of Appellant in the uniform. The military judge overruled the objection, reasoning that the alleged conduct included an element that Appellant's conduct was prejudicial to good order and discipline and the argument was proper as it addressed this element. Trial counsel then finished that portion of the argument by referring to Appellant as, "someone who did something like he did who is supposed to [lead] our airmen and is trusted with a commission."

Regardless of whether this limited comment constituted error, we conclude that Appellant was not prejudiced. Trial counsel did not dwell on this point, and this singular reference would not, within the context of the entire findings argument, inflame the members. Trial counsel finished that portion of the argument by appropriately arguing that Appellant's misconduct was both prejudicial to good order and discipline and was service discrediting. Trial counsel's findings argument was not a call for the members to disregard the law or facts and to determine guilt based on emotion. When the argument is viewed in its entirety, it appropriately focused on the elements of the charged offense and the evidence that supported each element.

Furthermore, we are not persuaded that this constituted trial counsel improperly arguing a personal opinion. She did not say or imply she personally believed Appellant's sexual molestation of a child discredited the uniform and the Air Force. Instead, when viewed in context, trial counsel was appropriately arguing that the evidence, and reasonable inferences derived from the evidence, supported a finding that Appellant's misconduct undermined and tarnished the reputation of the Air Force and damaged good order and discipline.

This argument was not improper.

### 2. Comment—Imagine the Offense

Appellant next asserts that it was plain error for trial counsel to improperly request that the members place themselves in the place of the victim.

During closing argument, trial counsel argued, without objection, that:

> Worse is not bringing ourselves to believe it. Worse is not letting yourself imagine what he did. *Imagine him lying next to [CG] on his bed, in his home and slipping his hand under her clothes and rubbing her vagina.* Eight years old and she laid on his bed in a home where she trusted him, watching Nickelodeon. It's a horrible thing to try and imagine. It's unthinkable, but worse than not doing that is failing to accept the reality of it.

(Emphasis added).

We disagree with Appellant's assertion that this argument asked the members to put themselves in the same shoes as the victim. Trial counsel appropriately asked the members to visualize the offense as it happened, as an outsider looking in. Though trial counsel vividly described Appellant's crimes, this is substantively distinct from asking the members to put themselves in the victim's place. *See Baer*, 53 M.J. at 237–38 (C.A.A.F. 2000) (distinguishing between asking members to imagine themselves in the place of a victim and asking them to imagine a victim's fear or pain). Thus, trial counsel's proper comments did not result in error, plain or otherwise.

### 3. Comment—Consideration of Uncharged Sexual Assault

Appellant also argues trial counsel committed plain error by purportedly encouraging the members to disregard the military judge's instruction by urging them to overcome a failure of proof and convict Appellant based solely on this other alleged offense.

Prior to closing arguments, the military judge correctly instructed the members on the proper use of the Mil. R. Evid. 414 evidence involving MP. If the members determined by a preponderance of the evidence the uncharged child molestation occurred, they could consider it for "its bearing on any matter to which it is relevant." This includes considering the evidence to show that Appellant has a propensity to engage in child molestation or that he intended to gratify his sexual desires. The military judge also instructed the members that they may not convict the accused solely because of the uncharged offense or their belief that Appellant had the propensity to engage in sexual molestation.

During opening statement, trial counsel said:

> You will hear from [MP], and she is not on the charge sheet, but you can listen to the actions that the accused took with [MP], and the judge is going to tell you that, that you can listen to those actions and take those into account when you are deciding that charge in front of you.

Then, during initial closing argument, trial counsel said:

> What there is evidence of is that the accused touched [MP] and [CG]. They're connected by nothing more than his betrayal of trust and the innocence he took from them. They're connected by what they went through because of him. That's the evidence that's in front of you and that's the evidence you must use to find him guilty.

14

Then, during rebuttal closing argument trial counsel said:

> You heard [CG]; you heard [MP]; you know how many previous times they have said the same thing. And you know beyond a reasonable doubt that this accused touched them and is guilty of indecent acts.

Contrary to the Defense's assertions, we conclude that these arguments neither directly nor indirectly requested the members to disregard the military judge's proper instruction on how to use the prior uncharged child molestation offense.

In the above statements, trial counsel asked the members to do exactly what the law requires them to do: consider relevant evidence admitted at trial. In the context of the full argument, the Government was arguing that the members should use Appellant's molestation of MP as evidence introduced at trial that could be used by the members on any matter to which it is relevant. To the extent that Appellant argues that the Government erroneously suggested that the members "must"—rather than "should"—use the propensity evidence to find Appellant guilty, this was not plain error and it did not prejudice Appellant.

Trial counsel's references to the prior alleged sexual assault did not constitute an overreliance on the uncharged offense. Trial counsel requested the members take into account the evidence of Appellant's molestation of MP, and to use that evidence when coming to a verdict. This does not conflict with the military judge's instruction on how they should consider the uncharged incidents, but rather echoes it. Appellant has not shown that trial counsel's comments, made at trial without objection, constitute prejudicial error, plain or otherwise.

**D. Sentencing Argument**

Appellant similarly asserted that trial counsel committed error during their sentencing argument by suggesting that the members sentence Appellant for the uncharged child molestation and his criminal propensity.

Prior to sentencing argument, the military judge instructed the panel that they must "bear in mind that the accused is to be sentenced only for the offense of which he has been found guilty." Trial counsel began his argument outlining Appellant's offense against CG. He then discussed certain sentencing principles, starting with punishment. When discussing rehabilitation and rehabilitative potential, assistant trial counsel argued:

> And let's move on to rehabilitation. You heard a little bit about that; you'll probably hear more from defense counsel in a little while but you have to ask yourselves, "What is his rehabilitative potential? How can we as court members form an appropriate

sentence to help determine how that process will go? How can we as court members perfect a change in the accused?" Frankly, as I'm sure you'll come to understand, it's going to take time. He expressed his perverted desires on two young innocent girls.

Based on this argument, defense counsel objected, requesting the military judge "instruct the members that what they're sentencing him for is what's on the charge sheet." The military judge agreed that Appellant should only be punished for the charged offense and instructed the members that they were "only sentencing him for the offense of which [they] found him guilty." The members all stated that they understood and trial counsel was permitted to continue.

Trial counsel continued his argument relating to lack of rehabilitative potential:

He did this before; he got caught, found a new victim, [CG]. So he started anew with her in 2006. But you don't learn these behaviors overnight. You don't learn how to sexually abuse a little girl licking your fingers and rubbing her vagina. That's not something you learn and do quickly. He's not going to unlearn those actions quickly either. A sentencing [sic] to seven years confinement will give him the opportunity to reflect on those crimes and begin that rehabilitative process.

Appellant did not object to this portion of the argument and, at the conclusion of his argument, trial counsel asked the members to sentence Appellant for "the crime you've convicted him of."

When concluding her sentencing instructions after arguments, the military judge asked both parties if they had any objections to the instructions or requests for other instructions. Both parties answered in the negative.

We disagree with Appellant's characterizations of trial counsel's argument, and conclude that the argument was not improper. Our superior court has held that "in a child molestation case, evidence of a prior act of child molestation 'directly relat[es] to' the offense of which the accused has been found guilty and is therefore relevant during sentencing under R.C.M. 1001(b)(4)." *Tanner*, 63 M.J. at 449. Here, trial counsel appropriately confined his use of the previously-admitted uncharged misconduct to the issue of Appellant's rehabilitative potential. Thus, there is no error in trial counsel's argument, plain or otherwise.

**E. Exclusion of Defense Exhibit for Lack of Authentication**

Appellant asserts, without articulating with any specificity how he was prejudiced, that the military judge erred by excluding an email purportedly written by Appellant's ex-wife because of a lack of authentication. While we

agree that the military judge erred, we find that the error was harmless as it did not have a substantial influence on the findings.

We review a military judge's decision to admit evidence for an abuse of discretion. *Ediger*, 68 M.J. at 248. "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

To satisfy the requirement to authenticate evidence under Mil. R. Evid. 901(a), "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." "[A]uthentication is a component of relevancy (evidence admitted as something can have no probative value unless that is what it really is)." *United States v. Blanchard*, 48 M.J. 306, 310 (C.A.A.F. 1998). When discussing authenticity, our superior court has noted:

> Generally speaking, the proponent of a proffered item of evidence needs only to make a prima facie showing that the item is what the proponent claims it to be. . . .
>
> Once the proponent has made the requisite showing, the trial court should admit the item, assuming it meets the other prerequisites to admissibility, such as relevance and compliance with the rule against hearsay, in spite of any issues the opponent has raised about flaws in the authentication. Such flaws go to the weight of the evidence instead of its admissibility. The trial court's admission of the exhibit means only that the fact finder may consider the item of evidence during its deliberations. The fact finder remains free to disregard the item if the trial evidence overcomes the preliminary showing of authenticity.

*United States v. Lubich*, 72 M.J. 170, 175 (C.A.A.F. 2013) (quoting 5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 901.02[3], at 901–13 to 901–14 (Joseph M. McLaughlin ed., 2d ed. 2003)). That said, authenticity still requires a military judge to make a preliminary determination that "sufficient evidence of authenticity exists to present the authenticity question to the members for their ultimate factual determination." *Id.* at 174 (quoting *Blanchard*, 48 M.J. at 309).

The Defense sought to admit an email purportedly sent from Appellant's ex-wife to Appellant after the first trial. The email was timestamped 0315 on Wednesday, 8 October 2008, and was sent from his ex-wife's Yahoo email account to Appellant's Yahoo email account. When the email was purportedly sent, Appellant was in confinement following his prior conviction for the same

alleged sexual molestation of CG.[4] The email consisted of a vitriolic rant against Appellant complaining that Appellant should stop emailing their biological daughter, that she had previously warned Appellant that she would exact revenge against him for leaving her and her kids, and that ruining Appellant's life was "the easiest thing I ever had to do." The email also referred to Appellant's new wife in a derogatory manner, threatened to "move on" to her, and suggested that his new wife might also end up in prison like him.

To lay a foundation for the email, the Defense called a defense paralegal who testified that he watched Appellant access his Yahoo email account through a web browser and print out the email. The Defense also called the biological daughter of both Appellant and his ex-wife, SH, to testify regarding her interactions with her mother at the time that the email was purportedly sent. SH was living with Appellant's ex-wife at the time because Appellant was in prison from his earlier court-martial. SH testified that, shortly before the email was purportedly sent, her dad was sending her emails and she would print them out and hide them in her room. When her mother, Appellant's ex-wife, found out about the emails, SH recalled that her mom was very angry. The Defense showed SH the email and she testified that she did not write it. She did believe, however, that the email accurately reflected her mother's beliefs and feelings at the time. She also testified that she overheard her mother use derogatory language towards Appellant's new wife that was similar to the language used in the email.

The Government, in response, called Appellant's ex-wife. The ex-wife testified that, though the email appeared to be from her account, she did not write or send it. She explained that the family computer was accessible to anyone in the house and that anyone in the house could have sent the email from her account. She did not testify about any other instances where she suspected other people used her personal email account to send emails that appeared to be written by her.

The ex-wife also identified another email that she admitted that she did send from her personal email account a day earlier. That other email, whose authenticity is not questioned, was signed in the same fashion as the email the Defense sought to introduce. In this earlier, more "civilized" email, the ex-wife told Appellant's current wife that she and anyone else from the new wife's family should stop contacting SH and, if the contact persisted, charges would be filed against her. She also suggested that, if there were any questions, she should contact the police officer working the issue. The email also included, as

---

[4] Appellant submitted an affidavit stating that he authorized his current wife to access his email account to send and receive emails to his biological daughter on his behalf.

a recipient, the police officer that Appellant's new wife should contact if she had any questions.

After considering argument of counsel, the military judge sustained the Government's authentication objection. While the military judge recognized that the email was sent from the ex-wife's personal email and appeared on its face to be written by the ex-wife, the military judge was most concerned about the other people having access to her email account and the potential it was not written by the ex-wife. The military judge found that her daughter, SH, could have accessed her mother's personal email account on the family computer. She further found that SH had a motive to falsify a vitriolic email from her mother to Appellant's new wife. The motive was SH's desire to live with Appellant's new wife. The concern, although there was no evidence the 2008 email was ever used in this fashion, was that SH may have falsified the email to increase the likelihood that Appellant's new wife would gain custody of her. As no one would admit to sending the email, the military judge ultimately concluded that the ex-wife's denials were more credible than SH's denials. Based upon her own determination of witness credibility, she excluded the email.

We conclude that the military judge abused her discretion by failing to properly apply a prima facie standard for authentication of the email. The issue was not whether the military judge personally found the ex-wife or SH more credible. The issue was instead whether the Defense provided a prima facie showing that the email was what it purported to be. As to this low bar, there was a prima facie showing that the email was sent from the ex-wife's personal email account and was signed consistently with other emails that the ex-wife had sent. There was also testimony that the contents of the email were consistent with the ex-wife's feelings about Appellant and his new wife. Additionally, the email, though certainly more vitriolic than the email the ex-wife admitted to sending hours earlier, was similar in purpose: to discourage Appellant's new wife from future contact with SH. There may be many reasons for the differing tones of those two emails, perhaps that the primary recipient of the vitriolic email was to her ex-husband, perhaps that the more "civilized" email was also carbon copied to a police officer, or perhaps—as the Government argued—that someone else forged the email to provide potential fodder for an ill-fated custody battle involving SH. Regardless, it was not the military judge's responsibility to evaluate which of these situations was most likely based on her personal evaluation of the credibility of the witnesses. Instead, the military judge was tasked to determine whether the Defense provided a prima facie

case that the email was what it purported to be. In this case, the Defense provided a sufficient foundation to authenticate the email and the military judge erred in concluding otherwise.[5]

We must next consider the issue of prejudice and whether the error was harmless. Non-constitutional error is harmless unless it had "a substantial influence on the findings." *United States v. Solomon*, 72 M.J. 176, 182 (C.A.A.F. 2013) (quoting *Berry*, 61 M.J. at 97). However, for constitutional error to be harmless, we must be convinced "beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence." *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005) (quoting *United States v. Kaiser*, 58 M.J. 146, 149 (C.A.A.F. 2003)).

Under the facts of this case, we believe that the erroneous exclusion of the email, on authentication grounds, did not constitute constitutional error. Our superior court has previously concluded that when a "military judge excludes evidence of bias, the exclusion raises issues regarding an accused's Sixth Amendment right to confrontation." *United States v. Moss*, 63 M.J. 233, 236 (C.A.A.F 2006).[6] The court further clarified, that "[a] defendant's right under the Sixth Amendment to cross-examine witnesses is violated if the military judge precludes a defendant from exploring an entire relevant area of cross-examination." *Id*. (quoting *United States v. Israel*, 60 M.J. 485, 486 (C.A.A.F. 2005). This concern is not raised here as the military judge's ruling did not preclude the entire relevant area of cross-examination.

The Defense purpose in introducing the email was to demonstrate the ex-wife's bias against Appellant. Introduction of the email, however, was only one instance among many that the Defense used to establish this bias. The Defense cross-examined the ex-wife about her troubled prior marriage with Appellant. They cross-examined the ex-wife about her anger towards Appellant for leaving her to be with his current wife. The Defense also questioned her about sending the email and the contents of that email, though the ex-wife denied authoring the email. In addition, the Defense also established this bias through

---

[5] In so holding, we do not address whether the military judge would have abused her discretion if she would have excluded introduction of this email after conducting an appropriate Mil. R. Evid. 403 balancing test. As the military judge elected to exclude the email based upon lack of authentication, she chose not to conduct an additional analysis under Mil. R. Evid. 403.

[6] An error implicating constitutional rights will "require reversal unless the error is harmless beyond a reasonable doubt." *Moss*, at 236. An error is harmless beyond a reasonable doubt if the Government can demonstrate "that 'there is no reasonable possibility' that the error 'contributed to the contested findings of guilty.'" *United States v. Collier*, 67 M.J. 347, 355 (C.A.A.F. 2009) (quoting *United States v. Othuru*, 65 M.J. 375, 377 (C.A.A.F. 2007)).

the testimony of their biological daughter. She testified that the ex-wife continued to harbor ill will toward Appellant and his new wife in the years following the divorce, to include overhearing her mother using derogatory words to describe Appellant's new wife. As a consequence, we hold that the military judge's exclusion of the proffered evidence did not deny Appellant his Sixth Amendment right of confrontation.

Applying the test for non-constitutional error, we find that the error did not have a substantial influence on the finding of guilt. The charged offense was the 2005 indecent acts against CG. Appellant's ex-wife had no interaction whatsoever with CG or her family. Her role, as it related to CG's allegations, was minimal. The ex-wife learned from her children about a potential second allegation of child molestation and then, at some point, brought those allegations to the attention of the authorities. If the email was introduced into evidence, and the members were persuaded that it was indeed written by Appellant's ex-wife, the email would merely suggest to the members that the ex-wife's actions in notifying authorities about CG's allegations may have been motivated more by vengeance or revenge than an altruistic act of a concerned citizen. As discussed previously, the Defense was permitted to pursue the ex-wife's bias and motivations in ways other than admission of the email. Furthermore, the ex-wife's actions and motivations are collateral to the offense against CG. As to the charged offense, the primary evidence supporting the conviction was CG's recollection of what happened to her years earlier.

For these reasons, we conclude that the military judge's error in excluding the email purportedly from the ex-wife to Appellant did not have a substantial influence on the findings.

## F. Ineffective Assistance of Counsel (IAC)

Appellant next asserts that his trial defense counsel were ineffective in three ways: (1) failing put on evidence of Appellant's good military character, (2) failing put on evidence of CG's and MP's character or reputation for untruthfulness, and (3) referencing the prior court-martial during the cross-examination of Appellant's ex-wife such that it opened the door to evidence of Appellant's prior conviction.

We ordered the submission of affidavits from trial defense counsel. Appellant submitted an additional affidavit in reply. Having reviewed the affidavits of Appellant and his counsel, we conclude we need not order additional fact-finding to resolve the assigned error. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). We conclude that Appellant is not entitled to relief based upon his allegations of ineffective assistance of counsel.

We review claims of ineffective assistance of counsel de novo, applying the two-part test outlined by the United States Supreme Court in *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Under that test, "to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010).

The deficiency prong requires Appellant to show his counsel's performance fell below an objective standard of reasonableness, according to the prevailing standards of the profession. *Strickland*, 466 U.S. at 688. To determine whether the presumption of competence has been overcome as alleged by an appellant, we examine whether there is a reasonable explanation for counsel's actions and whether defense counsel's level of advocacy fell measurably below the performance ordinarily expected of fallible lawyers. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011).

"While defense counsel would normally be expected to introduce potentially exculpatory evidence, their performance is not deficient when a tactical reason cautions against admission." *United States v. McIntosh*, 74 M.J. 294, 296 (C.A.A.F. 2015). "We do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine 'whether counsel made an objectively reasonable choice in strategy' from the available alternatives." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (quoting *Dewrell*, 55 M.J. at 136. "[S]trategic choices made by trial defense counsel are 'virtually unchallengeable' after thorough investigation of the law and the facts relevant to the plausible options." *Akbar*, 74 M.J. at 371 (quoting *Strickland*, 466 U.S. at 690–91; *Gooch*, 69 M.J. at 361 ("This Court 'will not second-guess the strategic or tactical decisions made at trial by defense counsel.'" (quoting *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009))).

The prejudice prong requires Appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In doing so, Appellant "must surmount a very high hurdle." *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997) (citing *Strickland*, 466 U.S. at 689). This is because counsel is presumed competent in the performance of his or her representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). Thus, judicial scrutiny of a defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000).

In *Gooch*, our superior court identified three basic questions to determine if the presumption of defense counsel's competence is overcome:

> (1) Are the appellant's allegations true; if so, is there a reasonable explanation for counsel's action in the case?

(2) If the allegations are true, did the level of advocacy fall measurably below the performance . . . [ordinarily expected] of fallible lawyers?

(3) If defense counsel was ineffective, is there a reasonable probability that, absent errors the outcome would be different?

*Gooch*, 69 M.J. at 362 (alterations in original) (citations and quotation marks omitted). "When challenging the performance of counsel, [an appellant] bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *Tippit*, 65 M.J. at 76.

### 1. IAC—Good Character of Appellant and Lack of Credibility by Accusers

Prior to trial, the Defense collected affidavits and information relating to Appellant's good military character. Although ten written statements were submitted during the sentencing portion of trial, trial defense counsel made a deliberate, tactical decision not to seek admission of good military charter evidence during the findings portion of trial. In addition, the Defense had evidence of CG's and MP's character or reputation for untruthfulness, but made a tactical decision not to seek admission of this evidence at the second trial. Appellant asserts that these decisions were objectively unreasonable and prejudiced Appellant.

In an affidavit presented to this court, civilian trial defense counsel explained that although the Defense had worked hard to collect good military character evidence, he made a decision to forego this defense because of "the risk of undiscovered allegations being used in rebuttal by the prosecution." Civilian defense counsel believed that Appellant's ex-wife was "full of bias against [Appellant] and more than willing to provide any derogatory information to prosecutors," and the Defense would be "powerless" to rebut the basis of "have you heard/did you know" questions. Additionally, the Defense reasoned that many of the character opinions were peripheral to the relevant time frame and not directly on point. Others were from military members with limited awareness of Appellant's personal life or from Appellant's family members with a clear bias. Finally, civilian defense counsel, while maintaining confidence in the decision to not present this evidence, expressed that with 20/20 hindsight, he now regrets the decision not to present good military character evidence, but maintains that he believes that it would not have had a positive impact on Appellant's case.

As to the character for truthfulness evidence involving the two complainants, civilian defense counsel stated that after reviewing the transcript of the first court-martial, he believed that the defense strategy at Appellant's first

court-martial had failed by choosing to attack the two child victims. He believed this tactic looked "petty and silly." He further stated that the basis for these witness opinions were CG's failure to complete homework and MP's views on Appellant's and his ex-wife's divorce. Furthermore, the civilian defense counsel explained that pre-trial interviews indicated that CG was a "well-liked and well regarded young woman, especially as it related to her integrity." Civilian defense counsel believed that a more effective trial tactic was to point out the implausibility and inconsistencies of the allegations.

With respect to evidence of Appellant's good military character and the victims' reputation/character for untruthfulness, this is not a case where counsel failed to uncover or collect evidence; rather, this is a case where, having diligently collected such evidence, counsel made a strategic decision to not seek admission of this evidence. This strategic decision was made after reviewing the record of trial from the first time Appellant was convicted of indecently assaulting MP and CG. This gave trial defense counsel a unique opportunity to evaluate the effectiveness of these strategies in the context of this specific case. We find no error in this strategic decision. It was well-reasoned and supported by the record of trial, and one that we will not now second guess.

### 2. IAC—Admission of Prior Trial during Cross–Examination

During the testimony of Appellant's ex-wife, the Defense cross-examined her about the previously discussed 2008 email sent from the ex-wife's personal email account to Appellant. The Defense went line by line through the email that, if in fact written by the ex-wife, evidenced the ex-wife's dislike of Appellant, her anger for Appellant having left her years earlier, her "joy" in getting her biological daughter removed from Appellant's new wife, her references to the prior court-martial, and the ex-wife's purported statement that "ruining [Appellant's] happy life . . . was the easiest thing [she] ever had to do." This line of questioning opened the door to the ex-wife testifying that there was a prior court-martial, but not the sentence that resulted from that prior court. On appeal, Appellant alleged that the decision to question the ex-wife in a manner that permitted testimony that Appellant was previously convicted was objectively unreasonable and prejudiced Appellant.

In response, civilian defense counsel stated that he believed the email from Appellant's ex-wife was "critical to [the Defense] case and necessarily implicated a reference to the first trial and its outcome." Prior to making the decision to open the door to this evidence, trial defense counsel consulted with an expert forensic psychologist. The trial defense team agreed that evidence of the ex-wife's bias was essential, even if it meant opening the door to evidence of the first court-martial. Trial defense counsel made this decision expecting and believing that he would later be able to admit the email during the Defense case. Nevertheless, considering that the military judge later prohibited the Defense

from offering this email into evidence to perfect this line of impeachment, the civilian defense counsel expressed regret at opening the door to evidence of the first court-martial.

We conclude that the civilian defense counsel's strategy, at the time he chose it and without the benefit of knowing how the military judge would later rule, was objectively reasonable. The strategy to cross-examine the ex-wife about her purported statements was reasonable. The decision was not made lightly or rashly, but was the product of thoughtful deliberation and an intentional choice. Trial defense counsel indicated in their affidavits that this was a matter they discussed at length prior to trial. This is indicated in trial defense counsel's statement that he understood that the door might be opened to evidence of the first case. While, with the benefit of hindsight, trial defense counsel may have chosen a different approach, that is not the standard by which we judge counsels' performance.

Moreover, even if this was error, we find no prejudice. The military judge instructed the members not to make any inference of guilt based on the pretrial process. After the cross-examination of the ex-wife, the military judge again instructed the members not to make any inferences of guilt based on references to "trial" or "Article 32." She further provided the following instruction:

> I bring this to your attention to remove any confusion or speculation from your mind and allow you to concentrate on what you hear in court during this rehearing. Now often the charges faced and the evidence presented at a previous trial differ from the charges faced and the evidence presented years later that [sic] a rehearing. You alone are charged with arriving at a determination based only on this charge and specification before you and the evidence now before you. You should not, in any way, be influenced by what another court-martial may have decided earlier. You will not be told—I don't expect you will be told the results of that prior trial and in part, because that shouldn't really be—it may be relevant for a specific purpose, but overall, it's not. Your duty as court members is to determine whether the accused is guilty or not guilty of the offense on the flyer, and if he is found guilty then to adjudge an appropriate sentence. You do that based only on what legal and competent evidence is presented for your consideration in this trial, this rehearing. The fact that there has been a prior trial is not evidence of guilt, nor is it evidence that you can use in sentencing, if sentencing is required. The fact that there has been a prior trial is not relevant for your determination of guilt or innocence. You have heard some evidence about its relation to the credibility of witnesses and motive to misrepresent, or to fabricate, or their biases, okay? So, you

25

can't erase the fact that something happened in the past and witnesses may or may not have been affected by that. You have already heard some testimony like that.

Furthermore, the Government did not improperly argue the prior court proceedings during closing argument.

We presume that the members followed the military judge's instruction, and Appellant has provided nothing to suggest they failed to do so. As such, even if trial defense counsel erred, that error did not create a reasonable probability that the result would have been different absent the error.

For these reasons, we find that Appellant has failed to establish that he was denied effective assistance of counsel.

### G. Factual Sufficiency

Appellant contends the evidence is factually insufficient to sustain his conviction of divers indecent acts with his minor niece, CG. We disagree.

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ; *United States v. Bethea*, 46 C.M.R. 223, 224–25 (C.M.A. 1973).

Appellant argues on appeal, as he did at trial, that the evidence was factually insufficient as it was based primarily on the testimony of CG, that there were some inconsistencies in CG's testimony, there were no other eyewitnesses to the conduct, and there was no physical or medical evidence.

We have carefully reviewed the evidence adduced at trial. We are not persuaded by Appellant's assertions that CG was not a credible witness based primarily on purported inconsistencies in her allegations. All of these inconsistencies are attributable and adequately explained by the intervening time between the alleged incident and her most recent testimony at trial. We find the testimony, subjected to the crucible of cross-examination, as consistent as to the vast majority of her testimony. We are convinced beyond a reasonable doubt that Appellant is guilty of divers indecent acts against CG.

**H. Cumulative Error**

Finally, Appellant contends even if none of the aforementioned alleged errors entitle him to relief, he is nevertheless entitled to relief under the cumulative error doctrine. We disagree.

We review such claims de novo. *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011). Cumulative error occurs when "a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding." *Id.* (quoting *United States v. Banks*, 36 M.J. 150, 170–71 (C.M.A. 1992)). "Assertions of error without merit are not sufficient to invoke this doctrine." *United States v. Gray*, 51 M.J. 1, 61 (C.A.A.F. 1999). We will reverse the proceedings only if we determine the cumulative errors denied the appellant a fair trial. *See Pope*, 69 M.J. at 335.

For the reasons set forth above, we conclude that Appellant is not entitled to relief under the cumulative error doctrine.

**I. Timely Appellate Review**

Though not raised by Appellant on appeal, we note that 278 days elapsed between announcement of sentence and convening authority action. Nevertheless, we do not find that sentence relief is warranted.

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). Accordingly, we review de novo whether Appellant has been denied his due process right to a speedy post-trial review and appeal. *Id.* In *Moreno*, the Court of Appeals for the Armed Forces established a presumption of unreasonable post-trial delay that requires a due process review when the convening authority does not take action within 120 days of trial. *Id.* at 142.

If there is a *Moreno*-based presumption of unreasonable delay or an otherwise facially-unreasonable delay, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135. *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of ability to present a defense at a rehearing. *Id.* at 138–39.

"We analyze each factor and make a determination as to whether that factor favors the Government or [Appellant]." *Id.* at 136. Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.*; *see also Barker*, 407 U.S. at 533 ("[C]ourts must still engage in a difficult and sensitive balancing process."). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a

27

finding." *Moreno*, 63 M.J. at 136. However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

The period of 278 days between sentence and action in this case is presumptively unreasonable, exceeding the standard by 158 days, and triggers a full due process review under *Moreno*. We also acknowledge that Appellant asserted in clemency, though not on appeal, that the post-trial processing exceeded the time standards of *Moreno* such that he was entitled to some relief. Turning to the other factors, however, we note that this case involved unusually voluminous and complex issues. The transcript consisted of 1,692 pages and the record of trial filled 39 volumes. Appellant's clemency submission was 171 pages and asserted six separate errors that counsel asserted justified setting aside the conviction. However, Appellant has not claimed on appeal any legally cognizable prejudice from the delay, and we find none. Though the delay is extensive, the compilation of this lengthy record and the nature and complexity of this case warranted a thorough review by the Government and the convening authority. Under the facts of this case, this delay would not adversely affect the public's perception of fairness and integrity of the military justice system. Therefore, we find no due process violation.

Although we find no due process violation in Appellant's case, we nonetheless consider whether Article 66(c), UCMJ, relief pursuant to *United States v. Tardif* is appropriate. 57 M.J. 219, 224 (C.A.A.F. 2002). We are guided by factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), with no single factor being dispositive.[7] Applying these factors and considering the circumstances of Appellant's case, we are not moved to reduce an otherwise appropriate sentence imposed by the military judge and approved by the convening authority.

---

[7] These factors include: (1) How long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) whether there is nonetheless evidence of harm (either to the appellant or institutionally) caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and whether relief is consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) whether, given the passage of time, whether this court can provide meaningful relief in this particular situation. *Gay*, 74 M.J. at 744, *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court